**No. 25-12365**

# United States Court of Appeals

*for the*

# Eleventh Circuit

MEUDY ALBÁN OSIO, in her personal capacity and in her capacity as the personal representative of the Estate of Fernando Alberto Albán, FERNANDO ALBÁN OSIO, MARIA FERNANDA ALBÁN OSIO,

*Plaintiffs-Appellees,*

– v. –

NICOLÁS MADURO MOROS, *et al.*,

*Defendants,*

PETRÓLEOS DE VENEZUELA, S.A. (PDVSA),

*Respondent-Appellant,*

OLIVIA PESCATORE, *et al.*,

*Third Party Defendants,*

KEITH STANSELL, *et al.*,

*Claimants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(HONORABLE DARRIN P. GAYLES)

## OPENING BRIEF OF RESPONDENT/APPELLANT PETRÓLEOS DE VENEZUELA, S.A.

CLAIRE A. DELELLE
DANIELLE S. TARIN
WHITE & CASE LLP
701 13th Street, NW
Washington, DC 20005
(202) 626-3600

W. DYLAN FAY
WHITE & CASE LLP
200 South Biscayne Boulevard,
Suite 4900
Miami, Florida 33131
(305) 371-2700

*Counsel for Petróleos de Venezuela, S.A.*

**AMENDED CERTIFICATE OF INTERESTED PERSONS**
**AND CORPORATE DISCLOSURE STATEMENT**

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellant Petróleos de Venezuela, S.A. certifies the following individuals and entities have an actual or potential interest in the outcome of the appeal:

1. Albán Osio, Fernando (Plaintiff)
2. Albán Osio, Maria Fernanda (Plaintiff)
3. Albán Osio, Meudy (Plaintiff)
4. Anderson, Cloe M. (Counsel for Plaintiffs)
5. Anschtz Gmbh (Claimant)
6. Ara, Diego Perez (Counsel for Garnishee ENI Trading & Shipping, Inc.)
7. Baker & McKenzie, LLP (Counsel for Garnishee Shell Trading (US) Company and Claimant Anschtz Gmbh)
8. Baker Botts, LLP (Counsel for Garnishees Repsol E&P Capital Markets US, LLC; Repsol E&P USA Holdings; Repsol Energy North America-Canada Partnership; Repsol Offshore E&P USA, Inc.; Repsol Oil & Gas USA, LLC; Repsol Trading USA, LLC; Repsol USA Holdings, LLC; and Halliburton Company)
9. Baker Hostetler, LLP (Counsel for Garnishee Weatherford International, LLC)

10. Bariven, S.A. (Subsidiary of Respondent-Appellant Petróleos de Venezuela, S.A.)
11. Bernstein, Benedict S. (District Court Counsel for Petróleos de Venezuela, S.A.)
12. Bianchi, Jamie A. (District Court Counsel for Petróleos de Venezuela, S.A.)
13. Blank Rome, LLP (Counsel for Garnishee Pierce Manufacturing, Inc.)
14. Blasi, Fernando (Member of the Counsel for the Administration and Protection of the Assets of the Republic of Venezuela (Consejo de Administración y Protección de Activos de la República de Venezuela))
15. Brackett, Alex J. (Counsel for Garnishee Vitol Inc.)
16. Braverman Greenspun, P.C. (Counsel for Garnishee JP Morgan Chase Bank, N.A.)
17. Caballero, Antonio (Third Party Defendant)
18. Cárdenas, Julián (Member of the Ad Hoc Administrative Board of Petróleos de Venezuela, S.A.)
19. Cartel of the Suns (Defendant)
20. Citibank, N.A. (Garnishee)
21. Citigroup Inc. (C) (Parent of Garnishee Citibank, N.A.)

22. Coffey, Melissa B. (Counsel for Garnishees Global Financial Management Services; Global Oil Delivery Systems, LLC; Global Oil Financial Services, LLC; and Global Oil Terminals, LLC)

23. Cooper, Brenton Hayes (Counsel for Garnishees Repsol E&P Capital Markets US, LLC; Repsol E&P USA Holdings; Repsol Energy North America-Canada Partnership; Repsol Offshore E&P USA, Inc.; Repsol Oil & Gas USA, LLC; Repsol Trading USA, LLC; Repsol USA Holdings, LLC; and Halliburton Company)

24. Council for the Management and Protection of Assets of the Republic of Venezuela (Consejo de Administración y Protección de Activos de la República de Venezuela) ("CAPA")

25. Crow, Heather Folsom (Counsel for Garnishees Schlumberger Limited and Schlumberger Technology Corporation)

26. Davis, Benjamin Cody (Counsel for Claimant Anschtz Gmbh)

27. DeLelle, Claire (Appellate Counsel for Respondent-Appellant Petróleos de Venezuela, S.A.)

28. Eni Petroleum Co. Inc. (Garnishee)

29. Eni S.p.A. (E) (Parent of Garnishees Eni Petroleum Co. Inc.; Eni Oil & Gas Inc.; Eni Trading & Shipping, Inc.; and Versalis Americas Inc.)

30. Eni Trading & Shipping, Inc. (Garnishee)

31. Esposito, Michael Roy (Counsel for Garnishee Pierce Manufacturing Inc.)
32. Fay, W. Dylan (Appellate Counsel for Respondent-Appellant Petróleos de Venezuela, S.A.)
33. Feigenbaum, Steven B. (Counsel for Garnishee JP Morgan Chase Bank, N.A.)
34. Floch, Brandon Scott (Counsel for Garnishees Valero Energy Corporation and Valero Marketing and Supply Company)
35. Foley & Lardner LLP (Counsel for Garnishees Global Financial Management Services; Global Oil Delivery Systems, LLC; Global Oil Financial Services, LLC; and Global Oil Terminals, LLC)
36. Fuerzas Armada Revolucionarias De Columbia (Defendant)
37. Gayles, the Honorable Darrin P. (United States District Court Judge)
38. Global Financial Management Services (Garnishee)
39. Global Oil Delivery Systems, LLC (Garnishee)
40. Global Oil Financial Services, LLC (Garnishee)
41. Global Oil Terminals, LLC (Garnishee)
42. Goicoechea, Yon (Member of CAPA)
43. Gonsalves, Marc (Third Party Defendant/Claimant)
44. Greenberg Traurig (Counsel for Garnishee JP Morgan Chase Bank, N.A.)
45. Guttman, Jamie D. (Counsel for Plaintiffs)
46. Halliburton Company (HAL) (Garnishee)

47. Holladay, Sara F. (Counsel for Garnishee Vitol Inc.)

48. Houston Refining LP (Garnishee)

49. Howes, Thomas (Third Party Defendant/Claimant)

50. Janis, Christopher (Third Party Defendant/Claimant)

51. Janis, Jonathan (Third Party Defendant/Claimant)

52. Janis, Judith (Third Party Defendant/Claimant)

53. Janis, Michael (Third Party Defendant/Claimant)

54. JP Morgan Chase & Co. (JPM) (Parent of Garnishee JP Morgan Chase Bank, N.A.)

55. JP Morgan Chase Bank, N.A. (Garnishee)

56. Klein, Jonathan Samuel (Former Counsel for Plaintiffs)

57. Korvick, Tony P. (Counsel for Third Party Defendants/Claimants)

58. Laing, Kufere J. (Appellate Counsel for Respondent-Appellant Petróleos de Venezuela, S.A.)

59. Lakatos, Alex C. (Counsel for Plaintiffs)

60. Lara, Iván (Member of the Ad Hoc Administrative Board of Petróleos de Venezuela, S.A.)

61. Lash & Goldberg, LLP (Counsel for Garnishees Houston Refining LP; Lyondell Chemical Company; and Lyonell Refining Company, LLC)

62. LDC Supply International, LLC (Garnishee)

63. Leon Cosgrove, LLC (Counsel for Garnishee ENI Trading & Shipping, Inc.)

64. Leon, Derek Eduardo (Counsel for Garnishee ENI Trading & Shipping, Inc.)

65. Lerner, Joshua D. (Counsel for Garnishee StoneX Group, Inc.)

66. Lisko, David John (Counsel for Garnishee Citibank, N.A.)

67. Lyondell Chemical Company (Garnishee)

68. Lyondell Refining Company, LLC (Garnishee)

69. LyondellBasell Indus. N.V. (LYB) (Parent of Garnishees Houston Refining LP; Lyondell Chemical Company; and Lyondell Refining Company, LLC)

70. M&T Bank Corporation (MTB) (Garnishee)

71. Maduro Moros, Nicolas (Defendant)

72. Marcano, Gustavo (Coordinator of CAPA)

73. Marcus Neiman, Rashbaum, & Pineiro LLP (Counsel for Garnishees Valero Energy Corporation and Valero Marketing and Supply Company)

74. Mark Pollack Law PA (Counsel for Defendant Sunstate Bank)

75. Mayer Brown, LLP (Counsel for Plaintiffs)

76. McGuire Woods, LLP (Counsel for Garnishee Vitol Inc.)

77. Medina, Horacio (Chairman of the Ad Hoc Administrative Board of Petróleos de Venezuela, S.A.)

78. Medlock, Stephen M. (Counsel for Plaintiffs)

79. Millan, Carlos (Member of CAPA)

80. Moreno Perez, Maikel Jose (Defendant)

81. Neiman, Jeffrey Adam (Counsel for Garnishees Valero Energy Corporation and Valero Marketing and Supply Company)

82. Oshkosh Corporation (OSK) (Parent of Garnishee Pierce Manufacturing Inc.)

83. Padrino Lopez, Vladimir (Defendant)

84. Parrish, Jimmy D. (Counsel for Garnishee Weatherford International, LLC)

85. PBF Energy Inc. (PBF) (Garnishee)

86. Pescatore, Jada (Third Party Defendant/Claimant)

87. Pescatore, Jarrod (Third Party Defendant/Claimant)

88. Pescatore, John (Third Party Defendant/Claimant)

89. Pescatore, Jordan (Third Party Defendant/Claimant)

90. Pescatore, Josh (Third Party Defendant/Claimant)

91. Pescatore, Olivia (Third Party Defendant/Claimant)

92. Pescatore, Richard (Third Party Defendant/Claimant)

93. Petrocedeño, S.A. (Subsidiary of Respondent-Appellant Petróleos de Venezuela, S.A)

94. Petróleos de Venezuela, S.A. (Respondent-Appellant)

95. Petroleum Marketing International (Subsidiary of Respondent-Appellant Petróleos de Venezuela, S.A.)

96. Petromonagas, S.A. (Subsidiary of Respondent-Appellant Petróleos de Venezuela, S.A.)

97. Petropiar, S.A. (Subsidiary of Respondent-Appellant Petróleos de Venezuela, S.A.)

98. Pierce Manufacturing Inc. (Garnishee)

99. Pineiro, Michael Anthony (Counsel for Garnishees Valero Energy Corporation and Valero Marketing and Supply Company)

100. PNC Bank, N.A. (PNC) (Garnishee)

101. Pollack, Mark Elliot (Counsel for Defendant Sunstate Bank)

102. Porter & Korvick, P.A. (Counsel for Third Party Defendants/Claimants)

103. Porter, Newton Patrick (Counsel for Third Party Defendants/Claimants)

104. Prada, Ricardo (Member of the Ad Hoc Administrative Board of Petróleos de Venezuela, S.A.)

105. Pruitt & Pruitt, P.A. (Counsel for Garnishee PNC Bank, N.A.)

106. Pruitt, William Earnest (Counsel for Garnishee PNC Bank, N.A.)

107. Repsol E&P Capital Markets US, LLC (Garnishee)

108. Repsol E&P USA Holdings (Garnishee)

109. Repsol Energy North America-Canada Partnership (Garnishee)

110. Repsol Offshore E&P USA, Inc. (Garnishee)

111. Repsol Oil & Gas USA, LLC (Garnishee)

112. Repsol Trading USA, LLC (Garnishee)

113. Repsol USA Holdings, LLC (Garnishee)

114. Reverol Torres, Nestor Luis (Defendant)

115. Riccio, L. Andrew Stern (Counsel for Garnishee Shell Trading (US) Company)

116. Rosneft Trading, S.A. (Garnishee)

117. Rumberger Kirk & Caldwell (Counsel for Garnishee StoneX Group, Inc.)

118. Saab, Tarek William (Defendant)

119. Salky, Mark Allan (Counsel for Garnishee JP Morgan Chase Bank, N.A.)

120. Scale Law Partners, LLC (Counsel for Plaintiffs)

121. Schlumberger Limited (SLB) (Garnishee)

122. Schlumberger Technology Corporation (Garnishee)

123. Shehadeh Giannamore, PLLC (Counsel for Defendant U.S. Century Bank)

124. Shehadeh, Jalal (Counsel for Defendant U.S. Century Bank)

125. Shell plc (SHEL) (Parent of Garnishee Shell Trading (US) Company)

126. Shell Trading (US) Company (Garnishee)

127. Stansell, Keith (Third Party Defendant/Claimant)

128. StoneX Group, Inc. (SNEX) (Garnishee)

129. Strauch, Michael Edward (Counsel for Garnishees Houston Refining LP; Lyondell Chemical Company; and Lyonell Refining Company, LLC)

130. Sunstate Bank (Defendant)

131. Tarin, Danielle (Appellate Counsel for Respondent-Appellant Petróleos de Venezuela, S.A.)

132. The Kullman Firm (Counsel for Garnishees Schlumberger Limited and Schlumberger Technology Corporation)

133. Torres, the Honorable Edwin G. (United States Magistrate Judge)

134. Trahan, Blair E. (District Court Counsel for Petróleos de Venezuela, S.A.)

135. U.S. Century Bank (Defendant)

136. USCB Financial Holdings, Inc. (USCB) (Parent of Defendant U.S. Century Bank)

137. Valero Energy Corporation (VLO) (Garnishee)

138. Valero Marketing and Supply Company (Garnishee)

139. Versalis Americas Inc. (Garnishee)

140. Vitol Inc. (Garnishee)

141. Weatherford International, LLC (WFRD) (Garnishee)

142. White & Case LLP (Appellate Counsel Law Firm for Respondent-Appellant Petróleos de Venezuela, S.A.)

143. Zumpano Patricios & Winker (Counsel for Third Party Defendants/Claimants)

144. Zumpano, Joseph Ignacio (Counsel for Third Party Defendants/Claimants)

Appellant Petróleos de Venezuela, S.A. further submits that it is wholly owned by the Bolivarian Republic of Venezuela and therefore is not a subsidiary or affiliate of a publicly owned corporation. No publicly traded company or corporation not a party to the litigation has a financial interest in the outcome of this case or appeal.

/s/ *Claire A. DeLelle*
Claire A. DeLelle

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 31(a)(2) and Eleventh Circuit Rule 28-1(c), PDVSA respectfully submits that oral argument will aid the Court's consideration of this appeal.

This appeal presents important questions of first impression in this Court about how the Foreign Sovereign Immunities Act ("FSIA), *as amended*, 28 U.S.C. §§ 1330, 1441(d), 1602 *et seq*., applies in the context of post-judgment enforcement actions brought under the Terrorism Risk Insurance Act of 2002 ("TRIA"), 28 U.S.C. § 1610 note, where judgment creditors invoking TRIA do not have an underlying judgment against the foreign state and where the foreign state is not a state sponsor of terrorism.

The appeal also presents important questions about the Executive Branch's authority to designate which particular foreign governments should be subject to suit and attachment under the FSIA and the appropriate legal rule governing service of process on a foreign state under the FSIA.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ..... C-1

STATEMENT REGARDING ORAL ARGUMENT ..... i

TABLE OF CITATIONS ..... iv

INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

STATEMENT OF JURISDICTION ..... 6

STATEMENT OF THE ISSUES ..... 6

STATEMENT OF THE CASE ..... 7

I. PDVSA IS NOT OWNED OR CONTROLLED BY MADURO BUT RATHER BY VENEZUELA'S U.S.-RECOGNIZED OPPOSITION GOVERNMENT AND THE AD HOC BOARD ..... 7

II. APPLICABLE LEGAL FRAMEWORK ..... 10

III. BACKGROUND ..... 15

IV. NEARLY IDENTICAL ENFORCEMENT ACTIONS THROUGHOUT THE UNITED STATES RAISE THE SAME QUESTIONS AT ISSUE IN THIS APPEAL ..... 27

ARGUMENT ..... 29

I. PDVSA RETAINS ITS IMMUNITY UNDER THE FSIA BECAUSE TRIA DOES NOT DISPLACE THE FSIA'S REQUIREMENT FOR AN EXCEPTION TO JURISDICTIONAL IMMUNITY IN THIS CASE ..... 29

II. THE DISTRICT COURT'S INTERPRETATION OF TRIA CANNOT BE SQUARED WITH THE POLITICAL QUESTION DOCTRINE ..... 39

III. THE DISTRICT COURT ERRED IN DECIDING THAT A FOREIGN STATE, WHICH IS NOT THE JUDGMENT DEBTOR, HAS BEEN PROPERLY SERVED WITH PROCESS IN A POST-JUDGMENT EXECUTION ACTION IF THE FOREIGN STATE HAD ACTUAL NOTICE OF THE ACTION....44

CONCLUSION....54

CERTIFICATE OF COMPLIANCE....56

CERTIFICATE OF SERVICE....57

# TABLE OF CITATIONS

**Page(s)**

## CASES

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)....10, 29, 33

*Banco Nacional de Cuba v. Sabbatino*,
376 U.S. 398 (1964)....41

*Beg v. Islamic Republic of Pakistan*,
353 F.3d 1323 (11th Cir. 2003)....26

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
581 U.S. 170 (2017)....30, 31

*Butler v. Sukhoi Co.*,
579 F.3d 1307 (11th Cir. 2009)....6, 25

*Commodities & Mins. Enter. v. CVG Ferrominera Orinoco, C.A.*,
49 F.4th 802 (2d Cir. 2022)....46

*De Gazelle Grp., Inc. v. Establishment*,
817 F.3d 747 (11th Cir. 2016)....49

*Does 1-7 v. Taliban*,
101 F.4th 1 (D.C. Cir. 2024)....passim

*Havlish v. Taliban*¸
2025 WL 2447193 (2d Cir. Aug. 26, 2025)....29, 36, 37, 38

*Jackson-Platts v. GE Cap. Corp.*,
727 F.3d 1127 (11th Cir. 2013)....29, 32

*Jiménez v. Palacios*,
250 A.3d 814 (Del. Ch. 2019),
*aff'd*, 237 A.3d 68 (Del. 2020)....10

*Jones v. United States*,
137 U.S. 202 (1890)....42

*LS Energia Inc. v. Corporacion Electrica Nacional S.A.*,
2023 WL 122196 (S.D. Fla. Jan. 6, 2023)....45

*Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*,
939 F.3d 1145 (11th Cir. 2019)....27

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*,
556 U.S. 366 (2009)....31, 35

*PDVSA US Litig. Trust v. Lukoil Pan Ams. LLC*,
65 F.4th 556 (11th Cir. 2023)....passim

*Peacock v. Thomas*,
516 U.S. 349 (1996)....29, 32

*Prewitt Ent. v. OPEC*,
353 F.3d 916 (11th Cir. 2003)....45, 52

*Republic of Argentina v. NML Cap., Ltd.*,
573 U.S. 134 (2014)....11, 12

*Republic of Sudan v. Harrison*,
587 U.S. 1 (2019)....passim

*Romero v. Drummond Co., Inc.*,
480 F.3d 1234 (11th Cir. 2007)....51

*Rubin v. Islamic Rep. of Iran*,
709 F.3d 49 (1st Cir. 2013)....32

*S & Davis Int'l, Inc. v. Republic of Yemen*,
218 F.3d 1292 (11th Cir. 2000)....6, 25

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*,
23 F.4th 1036 (D.C. Cir. 2022),
*cert. denied*, 143 S. Ct. 113 (2022)....48

*Schroder v. Bush*,
263 F.3d 1169 (10th Cir. 2001)....26

*Stansell v. FARC*,
45 F.4th 1340 (11th Cir. 2022)....14

*Stansell v. FARC*,
771 F.3d 713 (11th Cir. 2014) ....................................................15, 23, 34, 38

*United States v. Holy Land Found. for Relief & Dev.*,
445 F.3d 771 (5th Cir. 2006) ..........................................................32, 35

*United States v. Palmer*,
16 U.S. 610 (1818)..............................................................................42

*Vera v. Argentaria*,
946 F.3d 120 (2d Cir. 2019) ..............................................................31

*Volkswagenwerk AG v. Schlunk*,
486 U.S. 694 (1988)......................................................................49, 50

*Water Splash, Inc. v. Menon*,
581 U.S. 271 (2017)......................................................................47, 50

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
576 U.S. 1 (2015)...................................................................... 41, 42, 43

**STATUTES AND RULES**

28 U.S.C. § 1291 ..........................................................................6, 25

28 U.S.C. § 1330 ..........................................................................passim

28 U.S.C. § 1441(d) .....................................................................passim

28 U.S.C. § 1602 ..........................................................................passim

28 U.S.C. § 1603 ..........................................................................passim

28 U.S.C. § 1604 ..........................................................................passim

28 U.S.C. § 1605 ..........................................................................passim

28 U.S.C. § 1606 ..........................................................................passim

28 U.S.C. § 1607 ..........................................................................passim

28 U.S.C. § 1608 ..........................................................................passim

28 U.S.C. § 1609 ..........................................................................passim

28 U.S.C. § 1610 .......... passim

Fed. R. Civ. P. 4 .......... 17, 46, 49, 50

Fed. R. Civ. P. 69(a)(1) .......... 50

Terrorism Risk Insurance Act of 2002,
Pub. L. No. 107-297, § 201, 116 Stat. 2322 (Nov. 26, 2002) .......... passim

U.S. Const., Article VI, cl. 2 .......... 50

**MISCELLANEOUS**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters,
Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 .......... 47, 52

Exec. Order No. 13,857, 84 Fed. Reg. 509 (Jan. 30, 2019) .......... 8

General License No. 31B, *Certain Transactions Involving the IV Venezuelan National Assembly and Certain Other Persons*,
31 C.F.R. Pt. 591 (Jan. 9, 2023) .......... 9

*Press Statement*, U.S. Dep't of State (Jan. 3, 2023),
https://2021-2025.state.gov/venezuelas-interim-government-and-the-2015-national-assembly .......... 8

*State Sponsors of Terrorism*,
https://www.state.gov/state-sponsors-of-terrorism (last visited Sept. 18, 2025) .7

*Venezuela: A Democratic Crisis*, U.S. Dep't of State,
https://2017-2021.state.gov/a-democratic-crisis-in-venezuela/ .......... 7, 8, 51

*Venezuela: Political Crisis and U.S. Policy*,
Cong. Rsch. Serv. (Sept. 8, 2025),
https://www.congress.gov/crs_external_products/IF/PDF/IF10230/IF10230.73.pdf .......... 8

## INTRODUCTION AND SUMMARY OF ARGUMENT

Respondent-Appellant Petróleos de Venezuela, S.A. ("PDVSA") is an "agency or instrumentality of a foreign state," namely Venezuela. 28 U.S.C. § 1603(b). As such, it is presumptively immune from the jurisdiction of federal and state courts under the Foreign Sovereign Immunities Act ("FSIA") unless one of the exceptions to immunity enumerated in the FSIA applies. Although PDVSA is Venezuela's wholly owned national oil company, it is not owned or controlled by the self-proclaimed President of Venezuela Nicolás Maduro or members of his illegitimate regime. Instead, it is owned by the opposition government of Venezuela, which the United States recognizes as the only legitimate branch of the Venezuelan government, and controlled by an Ad Hoc Board established under the emergency transition laws of Venezuela enacted to combat the political crisis caused by Maduro.

The Osios, on the other hand, are Plaintiffs-Appellees who have obtained default judgments against Maduro and members of his illegitimate regime for torturing and murdering one of their family members. PDVSA strongly condemns Maduro's heinous acts, but PDVSA is not responsible for them and was not sued in their respect. Yet even though PDVSA is not controlled by and in fact opposes the Maduro regime, the Osios are seeking to enforce their default judgments against PDVSA, its subsidiaries, and their property, and thus are seeking to hold PDVSA

liable for Maduro's offenses, by invoking the Terrorism Risk Insurance Act ("TRIA"). Section 201(a) of TRIA permits attachment of certain blocked assets of a terrorist party, including its "agencies or instrumentalities," to satisfy a judgment against a terrorist party on a claim based upon an act of terrorism, but under very specific circumstances carefully drawn by Congress.

This appeal presents important questions of first impression in this Court about how the FSIA applies in the context of post-judgment enforcement actions brought under TRIA, where, as here, the judgment holders invoking TRIA do not have an underlying judgment against the foreign state (or its agency or instrumentality) and where the foreign state is not a state sponsor of terrorism. Those questions have paralyzed the district courts in numerous jurisdictions, where several groups of plaintiffs with default judgments against non-state actors are seeking to enforce their judgments against foreign sovereigns and their agencies and instrumentalities that are not the judgment debtors.

In this case, the Osios do not have an underlying judgment against PDVSA but are seeking to hold PDVSA liable for a judgment against Maduro and members of his illegitimate regime. Under Supreme Court and Eleventh Circuit law, however, the Osios must establish an independent basis for jurisdiction over PDVSA. The FSIA is the sole basis for obtaining jurisdiction over PDVSA, so the Osios were required to bring a new civil action against PDVSA and to show that one of the

exceptions to immunity set forth in Sections 1605 to 1607 of the FSIA applies. Because the Osios have not made such a showing, the District Court lacked jurisdiction over PDVSA, and PDVSA and its property retain their foreign sovereign immunity.

But the District Court declined to apply the FSIA and decided instead that TRIA granted it jurisdiction over PDVSA for the Osios' post-judgment enforcement action. As explained further below, that decision is incorrect, and should be reversed, because TRIA does not address immunity from suit. Rather, it permits asset recovery for persons who, unlike the Osios, have already satisfied the FSIA's jurisdictional requirements. PDVSA does not cease to become a foreign state governed by the FSIA simply because the Osios invoke TRIA, and TRIA's "[n]otwithstanding" clause does not swallow the FSIA's comprehensive framework whole. By holding otherwise, the District Court permitted the Osios to use TRIA to evade the jurisdictional immunities safeguarded by the FSIA and fundamentally altered the immunity regime enacted by Congress in that statute.

To compound matters, the District Court then remanded to the Magistrate Judge the issue of whether PDVSA is an "agency or instrumentality" of the Maduro regime under TRIA, so that that the District Court could assess whether PDVSA's assets may be attached to enforce the Osios' default judgment against the Maduro regime. In doing so, the District Court necessarily asked the Magistrate Judge to

overstep his constitutional authority and to determine whether the Maduro regime owns and controls PDVSA rather than the U.S.-recognized opposition government and the Ad Hoc Board of PDVSA.

But the District Court has no power to ask that question. And it has no power to answer it. As this Court has already held in *PDVSA US Litig. Trust v. Lukoil Pan Ams.*, that question is reserved for the political branches, whose role is to "identify the legitimate political leadership of a foreign country." 65 F.4th 556, 560 (11th Cir. 2023). If upheld, the District Court's decision would undermine the opposition government recognized by the United States and significantly limit the discretion of the Executive Branch's authority to designate which particular foreign governments should be subject to suit and attachment under the FSIA based on their support of terrorism.

Finally, the District Court applied the incorrect standard in assessing whether PDVSA was properly served with process. From the beginning of this post-enforcement action, the Osios have kept PDVSA and its subsidiaries in the dark. The Osios have submitted an unprecedented number of filings (seventy-four) *ex parte* and/or under seal, including writs seeking to garnish and execute upon PDVSA's and its subsidiaries' protectively blocked assets. They never served any of their motions, writs, resulting orders or judgments, or a summons or complaint on PDVSA or its affected subsidiaries. Instead, the Osios have consistently sent

mailings into Venezuela to facilities usurped by Maduro where no one legally authorized to represent PDVSA or its subsidiaries is present. This mode of purported service not only deprived PDVSA of its due-process opportunity to be heard in the District Court, but it also violated the applicable international treaty with the United States. Despite the Osios' abuse of the District Court's *ex parte* and sealing procedures, PDVSA eventually learned that the assets it protects on behalf of the Venezuelan people were in jeopardy and moved to vacate all writs, orders, and judgments against those assets.

When PDVSA raised these fundamental service defects, the District Court brushed them aside, determining that PDVSA's actual notice of the Osios' enforcement efforts would suffice as a substitute for proper service of process. The District Court then directed the Magistrate Judge to resolve any factual disputes about whether PDVSA had actual notice. That decision is incorrect as a matter of law because the FSIA establishes the exclusive process by which foreign states, including their agencies or instrumentalities, are served with judicial process. Even according to the District Court's own findings, the Osios failed to comply with the FSIA's service requirements, so the District Court necessarily lacked personal jurisdiction over PDVSA and was required to grant its motion to vacate.

## STATEMENT OF JURISDICTION

The District Court purported to exercise subject-matter jurisdiction over this action to enforce a default judgment under the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (Nov. 26, 2002), codified as a note following 28 U.S.C. § 1610. *See* D.E. 583. In doing so, the District Court denied PDVSA its sovereign immunity defenses under the Foreign Sovereign Immunities Act of 1976, *as amended*, 28 U.S.C. §§ 1330, 1441(d), 1602 *et seq*. D.E. 583 at 3.

That decision is immediately appealable, and this Court has jurisdiction to review it and all related orders, under 28 U.S.C. § 1291 and the collateral order doctrine. *See Butler v. Sukhoi Co.*, 579 F.3d 1307, 1311 (11th Cir. 2009); *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1295–97 (11th Cir. 2000). This appeal was timely filed on July 9, 2025, as the judgment against PDVSA was entered the same day. D.E. 583 at 3; D.E. 586.

## STATEMENT OF THE ISSUES

1. Whether the Terrorism Risk Insurance Act of 2002 conferred the District Court with subject-matter jurisdiction over post-judgment execution actions against a foreign state where the foreign state is not the judgment debtor or a state sponsor of terrorism.

2. Whether the political question doctrine barred the District Court from deciding that a foreign state is an "agency or instrumentality" of a terrorist party under the Terrorism Risk Insurance Act of 2002.

3. Whether the service provisions of the Foreign Sovereign Immunities Act apply to post-judgment enforcement actions against a foreign state's assets where the foreign state is not a judgment debtor, or whether instead the foreign state's actual notice of the post-judgment enforcement proceedings would suffice as a substitute for effective service of process.

## STATEMENT OF THE CASE

### I. PDVSA IS NOT OWNED OR CONTROLLED BY MADURO BUT RATHER BY VENEZUELA'S U.S.-RECOGNIZED OPPOSITION GOVERNMENT AND THE AD HOC BOARD

PDVSA is Venezuela's wholly owned national oil company. It is not an arm of a designated terrorist state. U.S. Statement of Interest, *Caballero v. FARC*, No. 20-MC-00040-LJV (W.D.N.Y. Sept. 20, 2022), D.E. 125 ("U.S. *Caballero* Br."), D.E. 310-1 at 4 n.2 ("Venezuela is not (and has never been) designated by the United States as a state sponsor of terrorism." (citing *State Sponsors of Terrorism*, https://www.state.gov/state-sponsors-of-terrorism (last visited Sept. 18, 2025)). Nor is it owned or controlled by Venezuela's illegitimate president Nicolás Maduro Moros. *See Venezuela: A Democratic Crisis*, U.S. Dep't of State, https://2017-2021.state.gov/a-democratic-crisis-in-venezuela/ (explaining that Maduro is a

politician who became president of Venezuela after a narrow electoral victory in 2013 and after declaring victory in subsequent presidential elections that are considered fraudulent by international observers and the U.S. government). Rather, PDVSA is owned and controlled by the opposition government of Venezuela, which the U.S. recognizes as "the only legitimate branch of the Government of Venezuela" and the Ad Hoc Board it established. Exec. Order No. 13,857, 84 Fed. Reg. 509 (Jan. 30, 2019); Decl. of Horacio Francisco Medina Herrera, D.E. 310-3 ¶ 4. As the opposition government, "most of its members are in exile." *Venezuela: Political Crisis and U.S. Policy*, Cong. Rsch. Serv. (Sept. 8, 2025), https://www.congress.gov/crs_external_products/IF/PDF/IF10230/IF10230.73.pdf.

The U.S.-recognized opposition government was formed in early 2019. Maduro first proclaimed his own presidential victory in 2018. But Venezuela's democratically elected legislature, the 2015 National Assembly, declared that presidency illegitimate and, on January 23, 2019, established an Interim Government, then led by Interim President Juan Guaidó, under Venezuela's Constitution. *Venezuela: A Democratic Crisis*, U.S. Dep't of State, https://2017-2021.state.gov/a-democratic-crisis-in-venezuela/. The United States immediately recognized the Interim Government and has repeatedly reaffirmed this recognition, including after the Interim Government was reorganized by the 2015 National Assembly. *Press Statement*, U.S. Dep't of State (Jan. 3, 2023), https://2021-

2025.state.gov/venezuelas-interim-government-and-the-2015-national-assembly; Letter from Amb. Michael G. Kozak, *Petróleos de Venezuela v. MUFG Union Bank, N.A.*, No. 19-cv-10023 (S.D.N.Y. Aug. 29, 2025), D.E. 393-1; U.S. Statement of Interest at 1, *MUFG Union Bank*, No. 19-cv-10023 (S.D.N.Y. Aug. 29, 2025), D.E. 393; *see LukOil*, 65 F.4th at 561.

The United States not only recognizes, but also affirmatively supports, the opposition government. On January 27, 2019, the United States Office of Foreign Assets Control ("OFAC") designated PDVSA as a sanctioned Venezuelan governmental entity and protectively blocked PDVSA's assets. OFAC did so—not because of any alleged connection by PDVSA to terrorism—but rather to back the Interim Government with a protective measure designed to prevent the Maduro regime from usurping PDVSA's assets and to "preserve th[o]se assets for the people of Venezuela." D.E. 310 at 11 (internal quotation marks and citation omitted); *see* U.S. *Caballero* Br., D.E. 310-1 at 22 ("[T]he United States often blocks assets for reasons that are broader or different than a foreign state's connection to terrorism."). Because the nature of the blocking is protective (and not punitive), PDVSA is often granted general licenses by OFAC allowing corporate entities to do business with it. *E.g.*, General License No. 31B, *Certain Transactions Involving the IV Venezuelan National Assembly and Certain Other Persons*, 31 C.F.R. Part 591 (Jan. 9, 2023).

On February 5, 2019, the 2015 National Assembly enacted the Statute to

Govern a Transition to Democracy to Reestablish the Full Force and Effect of the Constitution of the Bolivarian Republic of Venezuela. *See Jiménez v. Palacios*, 250 A.3d 814, 824 (Del. Ch. 2019), *aff'd*, 237 A.3d 68 (Del. 2020). Like the United States' asset blocking, the primary purpose of the Statute was to protect and preserve the assets of the Republic for the Venezuelan people. *Id.* To achieve that purpose, the 2015 National Assembly, among other actions, established and appointed the Ad Hoc Board of PDVSA. *See* Decl. of Horacio Francisco Medina Herrera, D.E. 310-3 ¶ 4. That board governs PDVSA. *See id.* Pursuant to its authority granted by the 2015 National Assembly, the Ad Hoc Board has authorized PDVSA to make a limited appearance in this action, including by filing the instant appeal, for the purpose of protecting its assets for the people of Venezuela.

## II. APPLICABLE LEGAL FRAMEWORK

### A. The Foreign Sovereign Immunities Act of 1976

PDVSA is an "agency or instrumentality" of a foreign state under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), *as amended*, 28 U.S.C. §§ 1330, 1441(d), 1602 *et seq*. The FSIA establishes the comprehensive and exclusive framework for obtaining and enforcing judgments against a foreign state in civil suits in U.S. courts. *See, e.g.*, *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434–35 (1989). For the purposes of the FSIA, a "foreign state" includes an "agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a).

### B. Foreign Sovereign Immunity

The FSIA "confers on foreign states two kinds of immunity," both of which a party must overcome to obtain judicial enforcement of a judgment against a foreign state. *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 142 (2014).

First, the FSIA provides "jurisdictional immunity" by directing that a "foreign state" is presumptively "immune from the jurisdiction" of federal and state courts unless its conduct falls within one of the exceptions to immunity in 28 U.S.C. §§ 1605 through 1607. 28 U.S.C. § 1604; *see also id.* § 1330(a). In addition to the original exceptions to jurisdictional immunity contained in 28 U.S.C. § 1605 (which mainly focus on the commercial activities or explicit waiver of a foreign state), Congress has amended the FSIA to provide for two exceptions to jurisdictional immunity to specifically address international terrorism impacting the United States.

One exception, 28 U.S.C. § 1605A, provides for jurisdiction over certain terrorism-related claims against designated "state sponsor[s] of terrorism." 28 U.S.C. § 1605A(a)(2)(A)(i)(I). A court may hear claims under this exception only if the state was designated when the act of terrorism occurred or was designated as a result of the act. As relevant here, "Venezuela is not (and has never been) designated by the United States as a state sponsor of terrorism." U.S. *Caballero* Br., D.E. 310-1 at 4 n.2 (citing *State Sponsors of Terrorism*, https://www.state.gov/state-sponsors-of-terrorism (last visited Sept. 18, 2025)).

Another exception, 28 U.S.C. § 1605B, enacted in 2016 as part of the Justice Against Sponsors of Terrorism Act ("JASTA"), provides jurisdiction over certain terrorism-related claims against any foreign state. This exception to jurisdictional immunity is not limited to state sponsors of terrorism, but it does include important limitations. In particular, it is limited to cases involving death or injury caused by "an act of terrorism in the United States." 28 U.S.C. § 1605B(b)(1). And the injury or death must be caused by a tortious act of the foreign state or its officials, employees, or agents acting within the scope of their employment. 28 U.S.C. § 1605B(b)(2).

Second, even when jurisdiction over a foreign state is established, the FSIA separately provides the foreign state with "execution immunity." *See NML Cap.*, 573 U.S. at 142. This type of immunity protects the foreign state's property in the United States from "attachment, arrest, and execution" by judgment creditors, except to the extent that an exception applies. The general rule for attachment immunity is that "the property in the United States of a foreign state shall be immune from attachment." *See* 28 U.S.C. § 1609. Sections 1610 and 1611 provide various exceptions and qualifications to the general immunity from attachment of foreign state property.

### C. Service of Process

Foreign states and their agencies or instrumentalities must be served according to specific service rules. *See* 28 U.S.C. § 1608; *Republic of Sudan v. Harrison*, 587 U.S. 1, 18–19 (2019) (holding that defects in service require reversal even where the defects were "highly technical" and "belatedly raised"). To establish personal jurisdiction over a foreign state, the court must have subject-matter jurisdiction (*i.e.*, an exception to jurisdictional immunity must apply), and the foreign state must have been served in accordance with Section 1608. *See* 28 U.S.C. § 1330(b). After a default judgment has been entered against a foreign state, a party generally cannot attach or execute upon the property of a foreign state under Section 1610 until the foreign state has been served with the default judgment in accordance with Section 1608 and has obtained an order necessary to begin enforcement proceedings. *See id.* §§ 1608(e), 1610(c).

### D. The Terrorism Risk Insurance Act Of 2002

In 2002, Congress enacted the Terrorism Risk Insurance Act of 2002 ("TRIA") to further help "those who have obtained valid judgments against terrorists and their affiliates to actually recover damages." *See* Pub. L. No. 107-297, 116 Stat. 2322 (Nov. 26, 2002), codified as a note following 28 U.S.C. § 1610. Section 201(a) of TRIA, as amended, provides:

> Notwithstanding any other provision of law, . . . in every case in which a person has obtained a judgment against a terrorist party on a claim

> based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

28 U.S.C. § 1610 note. TRIA defines "terrorist party" to include "a terrorist, a terrorist organization . . . or a foreign state designated as a state sponsor of terrorism." *Id.* § 201(d)(4).

As set forth above, a judgment holder seeking to attach assets under TRIA must prove that the assets are blocked (as that term is defined under TRIA) and that the assets are assets "of" the terrorist party, including the terrorist party's "agency or instrumentality." *Id*. § 201(a); *see Stansell v. FARC*, 45 F.4th 1340, 1346–47 (11th Cir. 2022). If a judgment holder is seeking to attach assets of a third party (*i.e.*, a party other than the terrorist party itself), the judgment holder must also prove that the third party qualifies as an "agency or instrumentality" of the terrorist party under § 201(a) of TRIA.

To determine whether a third party qualifies as an "agency or instrumentality" of a terrorist party under TRIA, the district court must first hold an evidentiary hearing. *See* D.E. 583 at 2–4. The focus of the hearing is on the judgment creditors' "prima facie burden to satisfy the elements under [TRIA] necessary to obtain the writ of garnishment at issue." *See* Order, *Stansell v. FARC*, No. 1:19-cv-20896 (S.D.

Fla. Sept. 12, 2025), D.E. 988. Where, as here, the third party has made a limited appearance to assert its immunities and defenses, the evidentiary hearing should not take place *ex parte* because the rationale for such a closed proceeding—to prevent the debtor from concealing or dissipating assets before the garnishment can take effect—is not implicated. *Cf. Stansell v. FARC*, 771 F.3d 713, 726 (11th Cir. 2014) ("*Stansell II*"). It is also unnecessary where, as here, the property is protectively blocked in the hands of third-party garnishees under U.S. sanctions laws.

If the judgment creditors fail to satisfy their burden, then the inquiry is over, and the writ will not issue. *See* Order at 6–7, *Stansell*, No. 1:19-cv-20896 (S.D. Fla. Aug. 27, 2025), D.E. 959. If they do satisfy their burden, then the District Court must give the third party an opportunity to contest the judgment creditors' allegations with its own evidence, after discovery. *Stansell II*, 771 F.3d at 724. Any determination that the third party is an "agency or instrumentality" of the terrorist party is tantamount to a determination that the third party is liable for the default judgment. A trial would therefore be required. *See* Mot., *Stansell*, No. 1:19-cv-20896 (S.D. Fla. Aug. 22, 2025), D.E. 952.

## III. BACKGROUND

### A. Factual and Procedural History

This action arises from a case in which the Plaintiffs-Appellees, the Albán Osios ("Osios"), obtained $217 million in default judgments against Maduro,

members of his illegitimate regime (including those collectively referred to as the "Cartel of the Suns"), and the defunct Colombian narco-terrorist organization Fuerzas Armadas Revolucionarias de Colombia ("FARC") for the 2018 kidnapping, torture, and murder of their family member Fernando Alberto Albán. D.E. 1 at 4. PDVSA was not a defendant or a judgment debtor in that case.

### B. The Osios Seek to Enforce Their Default Judgments by Executing Upon PDVSA's Assets

In early 2024, the Osios began seeking to enforce their default judgments by executing upon the assets of PDVSA, alleging that PDVSA is an "instrumentality" of Maduro and the other judgment debtors under TRIA. Despite invoking TRIA, the Osios' allegations center not on any terrorist activity by PDVSA or its subsidiaries, but rather on alleged financial crimes: the purported misuse of PDVSA's assets by the Maduro regime for money laundering and corruption. *See, e.g.*, D.E. 94 at 10. The Osios also alleged that PDVSA lacks jurisdictional immunity from suit under the commercial-activity exception of the FSIA. *See*, *e.g.*, D.E. 94 at 29. On January 5, 2024, the Osios moved *ex parte* for a writ of execution on a Learjet allegedly owned by PDVSA. D.E. 94 at 1.

On April 17, 2024, the Magistrate Judge entered an order "find[ing] no cause why notice was not provided to the title owner and the party in possession of the [Learjet]" and directing the Osios to certify "conferral with any such persons/entities" and "service of the motion on any known interested parties." D.E.

102. On April 30, 2024, Plaintiffs certified that they had "mailed a copy of the Motion to the title owner of the Aircraft, [PDVSA], as provided in Fla. Stat. § 56.21" and that "an additional copy was served in compliance with Rule 4, Federal Rules of Civil Procedure and statutes incorporated by reference there," without providing any details as to what such service entailed. D.E. 105 at 1–2. The Osios also certified that although they had conferred with the entity that was holding the Learjet, they did not confer with PDVSA. D.E. 105 at 2. In any event, no service was made on PDVSA, and, consequently, PDVSA did not appear at that time.

On June 10, 2024, in PDVSA's absence, the Magistrate Judge issued a Report and Recommendation ("R&R"), recommending that the District Court issue the writ based on his conclusion that PDVSA is an "agency or instrumentality" of terrorist parties Maduro and the Cartel under TRIA. D.E. 110 at 6–8. This conclusion rested solely on the fact that, as explained above, OFAC had designated PDVSA as a sanctioned Venezuelan governmental entity. D.E. 110 at 6–8. The Magistrate Judge declined to address PDVSA's presumptive immunity under the FSIA because PDVSA had not appeared to object, given that it had not been served. D.E. 110 at 4. On July 1, 2024, the District Court issued an order adopting the R&R and granting the Osios' *ex parte* motion. D.E. 113 ("July 1 Order"). That same day, the Clerk of Court issued a writ of garnishment as to the Learjet. D.E. 114.

Since then, the Osios have used the July 1 Order to obtain writs to garnish other assets purportedly belonging to PDVSA. *See* D.E. 310 at 3–4; D.E. 551 at 1. They have also used the July 1 Order to obtain writs to garnish assets purportedly belonging to PDVSA's subsidiaries, even though the District Court never determined that those entities qualify as an "agency or instrumentality" of the judgment debtors under TRIA. *See, e.g.*, D.E. 389; D.E. 551 at 1. In addition to these writs, the Osios have obtained a turnover judgment of $7.7 million owed to PDVSA and PDVSA's pension fund held by garnishee M&T Bank. D.E. 250. And they have moved for turnover of PDVSA funds held by other garnishee banks. *See, e.g.*, D.E. 161.

As discussed further below, the District Court has transferred an interpleader complaint filed by garnishee JPMorgan Chase Bank, N.A. regarding a bank account in New York, which holds funds purportedly belonging to a PDVSA subsidiary, to the U.S. District Court for the Southern District of New York. *See* D.E. 395; *see also* D.E. 357; Order, *In re Claims Against the Valero-Petrocedeno Account*, No. 20-mc-249 (S.D.N.Y. July 8, 2025), D.E. 162. The Magistrate Judge, however, has recently issued a new writ over the New York account to the Osios. PDVSA and its subsidiary have objected, with PDVSA explaining that it was compelled to do so despite the pendency of this appeal because the Osios' basis for the writ is under seal. Based on the Osios' past practice, it is likely that the Osios relied exclusively

or almost exclusively on allegations regarding PDVSA to obtain the writ. *See, e.g.*, D.E. 405-1; D.E. 620.

The Osios have submitted an unprecedented number of filings *ex parte* and/or under seal in this action, including writs seeking to garnish PDVSA's and its subsidiaries' assets. To date, that number has reached seventy-four filings. Despite these filings' secrecy, PDVSA has been able to learn that the Osios are seeking to garnish the Learjet and at least $11.8 million from PDVSA. *See* D.E. 94; D.E. 248; D.E. 642. PDVSA has asked the District Court to unseal all the filings. Tr. 12 (S.D. Fla. July 1, 2025). But the District Court did not rule on that request. The Osios continue to move *ex parte* and under seal even though PDVSA has appeared to assert its rights and defend its interests and assets.

### C. PDVSA Moves to Vacate All Writs, Orders, or Judgments Pertaining to Its or Its Subsidiaries' Assets

On December 14, 2024, PDVSA moved to vacate the July 1 Order, dissolve the writs of garnishment, vacate the turnover judgment, deny the turnover motions, and dismiss the action as to PDVSA, its subsidiaries, and their property with prejudice. D.E. 310 ("Motion to Vacate").

PDVSA argued that, to hold PDVSA liable for their default judgments under TRIA, the Osios were required, but failed, to at least initiate a new civil action and establish that the District Court had subject-matter jurisdiction based upon an exception to PDVSA's presumptive immunity under Sections 1605 to 1607 of the

FSIA. *Id.* at 6. PDVSA explained that, even if they had tried, the Osios would not have succeeded because no such immunity exception applies and because TRIA does not provide an independent exception to immunity from jurisdiction here. *Id.* PDVSA further explained that although TRIA provides an exception to immunity from attachment and execution where a plaintiff has overcome the immunity of a state sponsor of terrorism under Section 1605A (or former Section 1605(a)(7)), that exception does not apply here, where the Osios had not obtained a judgment against Venezuela under Section 1605A and could not do so because Venezuela has never been designated a state sponsor of terrorism. *Id.*

PDVSA also argued that the Osios failed to establish personal jurisdiction over PDVSA. As noted above, to establish personal jurisdiction over a foreign state, the court must have subject-matter jurisdiction (*i.e.*, an exception to jurisdictional immunity under Sections 1605 to 1607 must apply), and the foreign state must have been served in accordance with Section 1608. *See* 28 U.S.C. § 1330(b). PDVSA explained that the District Court lacked subject-matter jurisdiction, the Osios failed to properly serve PDVSA under Section 1608(b) of the FSIA, and the Osios failed to show that the exercise of personal jurisdiction over PDVSA would satisfy constitutional due process. D.E. 310 at 7–10. PDVSA also argued that, even assuming a new civil action were not required, PDVSA was not served with notice of the motion for the writ, the ensuing order, the writ itself, or the turnover judgment.

Next PDVSA argued that the Osios' claim that PDVSA is an "agency or instrumentality" of Maduro and the Cartel under TRIA is a nonjusticiable political question. *Id.* at 10–12. PDVSA explained that the District Court lacks the power to declare PDVSA an "agency or instrumentality" of Maduro and the Cartel under TRIA because doing so would contravene the political branches' decision to recognize the opposition government, and not the Maduro regime, as the only legitimate branch of the Government of Venezuela. *Id.*

PDVSA further argued that, even if that question were justiciable, the District Court would have to answer it in the negative for several reasons. *Id.* at 12–20. PDVSA explained that TRIA applies only to state sponsors of terrorism, which Venezuela and PDVSA are not. *Id.* at 12–15. PDVSA also explained that, even if TRIA were to apply here, the Osios failed to show that PDVSA is an "agency or instrumentality" of Maduro and the Cartel or that the blocked assets are assets "of" a judgment debtor under TRIA. *Id.* at 15–18. PDVSA further explained that TRIA does not permit the Osios to ignore PDVSA's corporate form or otherwise to seek to garnish the assets of its subsidiaries. *Id.* at 19–20.

In addition, PDVSA argued that the Osios failed to satisfy the requirements of Section 1610(c) of the FSIA. *Id.* at 20. As relevant here, that provision prohibits attachment and execution under Sections 1610(a) or (b) of the FSIA until (1) "the court has ordered such attachment and execution after . . . a reasonable period of

time has elapsed following the entry of judgment" and (2) the Osios have served their default judgment or the July 1 Order on PDVSA in accordance with Section 1608(e) governing service of process for default judgments. *See id.* at 20 (citing 28 U.S.C. § 1610(c)).

Finally, PDVSA argued that the District Court lacked in-rem jurisdiction to issue writs over any property held outside the forum. *Id.* at 20.

Because the Osios continued obtaining writs of garnishment even after PDVSA filed its Motion to Vacate, PDVSA subsequently asked the District Court to dissolve those additional writs as well, for the same reasons as explained in the Motion to Vacate. D.E. 389; D.E. 551.

### D. The District Court Denies the Motion to Vacate in Part

On April 9, 2025, the Magistrate Judge issued a Report and Recommendation, recommending that the District Court grant in part and deny in part the Motion to Vacate. D.E. 401. The Magistrate Judge recommended that the District Court determine that (1) TRIA "confers this Court with subject matter jurisdiction over [the Osios'] post-judgment proceedings against PDVSA's blocked assets" and thus the FSIA does not apply; (2) the Osios failed to comply with the FSIA's service requirements but "PDVSA's actual notice of [the Osios'] enforcement efforts is enough to find sufficient service" of process; (3) "PDVSA has sufficient contact with Florida to satisfy due process"; (4) the District Court "does not have to resolve

a non-justiciable political question to determine PDVSA's status as an agency or instrumentality of the Maduro regime"; (5) the Eleventh Circuit's decision in *Stansell II*, 771 F.3d at 724, sets forth the applicable standard for assessing whether PDVSA is an "agency or instrumentality of the Maduro regime" under TRIA; and the Osios (6) showed that PDVSA is an "agency or instrumentality of the Maduro regime" under TRIA but (7) failed to show that its subsidiaries are "agencies or instrumentalities of the Maduro" regime. *See* D.E. 401; D.E. 583 at 2. Accordingly, the Magistrate Judge recommended that the District Court grant the Motion to Vacate only to the extent that it sought an order dissolving the writs seeking to garnish the subsidiaries' assets and denying the motions to turnover those assets. D.E. 401 at 24.

The Magistrate Judge did not address PDVSA's argument that the District Court lacks *in rem* jurisdiction, despite acknowledging in a report and recommendation on a separate motion filed by a garnishee that "there is a contentious question" as to the Court's *in rem* jurisdiction over accounts located outside the forum. *See* D.E. 357 at 11. The garnishee had asked the District Court to transfer its interpleader proceedings regarding an account for which the Osios had obtained a writ of garnishment to the Southern District of New York, where the account was located, on the ground (among others) that the Southern District of Florida lacked *in rem* jurisdiction. *See id.* Although the Magistrate Judge declined

to resolve the argument there too, the Magistrate Judge observed that "numerous federal courts in Florida have held that extraterritorial bank accounts are outside of their jurisdictional reach, even where the relevant banks operated branches in Florida," and that "the majority of persuasive authority weighs in favor of" finding that the District Court lacks *in rem* jurisdiction. *Id.* at 11–14 (collecting cases). The Magistrate Judge thus recommended that the District Court grant the garnishee's transfer request, in part because the Southern District of New York (unlike the Southern District of Florida) "undoubtedly has in rem jurisdiction." *Id.* at 15. The District Court agreed and granted the transfer request. *See* D.E. 395.

PDVSA timely filed objections to the R&R on the Motion to Vacate on April 23, 2025. D.E. 414. The Osios responded to the objections. D.E. 447. On July 1, 2025, the District Court held a hearing on PDVSA's objections. *See* D.E. 583 at 1.

On July 9, 2025, the District Court adopted the R&R in part and remanded the matter to the Magistrate Judge for an evidentiary hearing. D.E. 583 at 4. In particular, the District Court adopted all the Magistrate Judge's recommendations, with two exceptions. The District Court found that there were two "disputed questions of fact": (1) whether PDVSA had actual notice of the proceedings such that service was proper and (2) whether PDVSA is an "agency or instrumentality" of the Maduro regime under TRIA. D.E. 583 at 3–4. Accordingly, the District Court remanded the matter to the Magistrate Judge for an evidentiary hearing on those

questions. *Id.* Otherwise, the District Court found, as relevant here, that it had subject-matter jurisdiction under TRIA and the FSIA did not apply, that the political-question doctrine "d[id] not prohibit the Court from adjudicating the issues in this proceeding," and that service of process was proper if PDVSA had actual notice of the Osios' enforcement efforts. *Id.* Like the Magistrate Judge, the District Court did not address PDVSA's argument that the Court lacks *in rem* jurisdiction.

Because the District Court's decision finding that TRIA conferred the court with subject-matter jurisdiction deprived PDVSA of its jurisdictional immunity from suit under the FSIA, PDVSA immediately appealed from the District Court's decision under 28 U.S.C. § 1291 and the collateral order doctrine. *See* Notice of Appeal, D.E. 586 (citing *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1311 (11th Cir. 2009); *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1295–97 (11th Cir. 2000)). The District Court granted PDVSA's request to stay the proceedings as to PDVSA, but declined to stay the proceedings as to its subsidiaries. *See* D.E. 665.

**E. The Osios Continue Their Enforcement Efforts**

As explained above, the District Court found that the Osios failed to show that PDVSA's subsidiaries are "agencies or instrumentalities" of the judgment debtors under TRIA and dissolved those writs. *See* D.E. 583 at 1. And the District Court found that there was a disputed factual question whether PDVSA was an "agency or instrumentality" of the judgment debtors under TRIA. *Id.* Despite that decision, the

Osios moved the District Court to turnover assets purportedly belonging to Petromonagas, one of PDVSA's subsidiaries. D.E. 620. Petromonagas opposed the turnover motion, explaining that the writ had been vacated because there was no "agency or instrumentality" determination to support the writ. D.E. 686. This turnover motion remains pending.

In addition, while the R&R was pending with the District Court, the Osios attempted to preempt the District Court's decision by filing—again *ex parte* and under seal—a new motion for a writ against one of PDVSA's subsidiaries at issue in the R&R, Petrocedeño. D.E. 537; D.E. 616. Because this motion was *ex parte* and under seal and not served on Petrocedeño, Petrocedeño did not have notice and thus did not appear. The Magistrate Judge did not hold an evidentiary hearing, did not order service or even notice to Petrocedeño, and authorized the writ to be reissued. D.E. 674.

### F. The Standard of Review is De Novo

The District Court's decisions were conclusions of law, so this Court reviews them de novo. *See Does 1-7 v. Taliban*, 101 F.4th 1, 8 (D.C. Cir. 2024) (explaining that courts of appeal review the district court's decisions about its jurisdiction under the FSIA and TRIA de novo); *Beg v. Islamic Republic of Pakistan*, 353 F.3d 1323, 1324 (11th Cir. 2003) (Issues of jurisdiction, including under the FSIA, are reviewed de novo.); *Schroder v. Bush*, 263 F.3d 1169, 1173 (10th Cir. 2001) (The political

question doctrine, as a legal question, is reviewed de novo.); *Lukoil*, 65 F.4th at 562 (same); *Managed Care Advisory Grp., v. CIGNA Healthcare*, 939 F.3d 1145, 1153 (11th Cir. 2019) ("A district court's decision regarding personal jurisdiction is reviewed *de novo.*" (citation omitted)). This Court reviews factual findings for clear error. *Taliban*, 101 F.4th at 8.

## IV. NEARLY IDENTICAL ENFORCEMENT ACTIONS THROUGHOUT THE UNITED STATES RAISE THE SAME QUESTIONS AT ISSUE IN THIS APPEAL

The questions PDVSA raises in the instant appeal are the same questions at issue in a nearly identical case, also in the U.S. District Court for the Southern District of Florida. In *Stansell*, the plaintiffs are judgment creditors with a default judgment against the FARC and have sought to satisfy their default judgment by obtaining writs to garnish the assets of PDVSA, its subsidiaries, and other Venezuelan state-owned entities. PDVSA and its subsidiaries have moved the District Court (Scola, J.) to vacate any writs, orders, or judgments pertaining to those assets, asserting the same arguments they asserted in the Motion to Vacate at issue here. *See* Am. Mot., *Stansell*, No. 1:19-cv-20896 (S.D. Fla. July 2, 2025), D.E. 827. The *Stansell* plaintiffs withdrew their writs seeking to garnish PDVSA's assets. Nonetheless, PDVSA remains a necessary and indispensable party the proceedings, and yet it cannot be joined because it is immune from suit under the FSIA. *See* Mot.,

*Stansell*, No. 1:19-cv-20896 (S.D. Fla. Aug. 20, 2025), D.E. 944; Mot., *Stansell*, No. 1:19-cv-20896 (S.D. Fla. Sept. 3, 2025), D.E. 972.

The *Stansell* motion to vacate remains pending. But the Magistrate Judge (who is the same Magistrate Judge assigned to the Osios' action) set an evidentiary hearing for October 22, 2025, to focus on the judgment creditors' "prima facie burden to satisfy the elements under [TRIA] necessary to obtain the writ of garnishment at issue." *See* Order, *Stansell*, No. 1:19-cv-20896 (S.D. Fla. Sept. 12, 2025), D.E. 988. Although the instant appeal will have a controlling effect on the case, the Magistrate Judge declined to stay the case pending this appeal. Order, *Stansell*, No. 1:19-cv-20896 (S.D. Fla. Aug. 27, 2025), D.E. 959.

PDVSA and its subsidiaries are non-party respondents in numerous other enforcement actions initiated by judgment creditors seeking to garnish PDVSA's and its subsidiaries' property to satisfy default judgments they obtained against various defendants. Neither PDVSA nor its subsidiaries are a judgment debtor in those cases. The jurisdictions include the U.S. District Court for the Southern District of New York, *Stansell v. FARC*, No. 16-mc-405 (S.D.N.Y.), and *In re Claims Against the Valero-Petrocedeno Account*, No. 20-mc-249 (S.D.N.Y.); the U.S. District Court for the Western District of New York, *Caballero v. FARC*, No. 20-mc-40 (W.D.N.Y.); the U.S. District Court for the District of South Carolina (Columbia Division), *Caballero v. FARC*, No. 20-cv-4485 (D.S.C.); and the U.S.

District Court for Southern District of Texas, *Caballero v. FARC*, No. 21-cv-1668 (S.D. Tex.). Those proceedings had been previously stayed pending a decision by the Second Circuit in a case discussed further below (*Havlish v. Taliban*¸ 2025 WL 2447193 (2d Cir. Aug. 26, 2025)). But now that the Second Circuit has issued its decision in that case, the proceedings are resuming, and the same questions at issue in this appeal will arise in those cases.

## ARGUMENT

### I. PDVSA RETAINS ITS IMMUNITY UNDER THE FSIA BECAUSE TRIA DOES NOT DISPLACE THE FSIA'S REQUIREMENT FOR AN EXCEPTION TO JURISDICTIONAL IMMUNITY IN THIS CASE

The Osios are seeking to hold PDVSA liable for a judgment against a third party. So, they must establish an independent basis for jurisdiction over PDVSA. *See Peacock v. Thomas*, 516 U.S. 349, 359 (1996); *Jackson-Platts v. GE Cap. Corp.*, 727 F.3d 1127, 1134 (11th Cir. 2013). "[T]he FSIA provides the sole basis for obtaining jurisdiction" over PDVSA because it is an "agency or instrumentality of a foreign state." *Amerada Hess Shipping Corp.*, 488 U.S. at 434. PDVSA is thus entitled to the FSIA's presumptive immunity unless the Osios show that this suit falls into one of the exceptions to jurisdictional immunity set forth in Sections 1605 to 1607. *See* 28 U.S.C. § 1604. Because the Osios have not made such a showing, the District Court lacked subject-matter jurisdiction and should have granted the Motion to Vacate.

Nevertheless, the District Court decided that TRIA grants it jurisdiction "over the post-judgment proceedings." D.E. 583 at 3. That decision is incorrect. As an initial matter, the District Court ignored that the FSIA provides two distinct forms of immunity—immunity from suit and immunity from execution. *See Taliban*, 101 F.4th at 5–6. And it further ignored that these distinct immunities impose distinct hurdles: first, judgment-seeking plaintiffs must establish that the foreign state (including its agency or instrumentality) is not immune from suit; second, those plaintiffs must establish that the "property to be attached or executed against is not immune from execution." *Id.* at 6. Because the District Court did not determine whether the Osios' action cleared these hurdles, it failed to fulfill its constitutional duty to assure itself of jurisdiction. *Cf. Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 174 (2017) (explaining that the "basic objective" of foreign sovereign immunity is "to free a foreign sovereign from suit," so it must be decided at the outset).

TRIA is not a workaround that confers jurisdiction over suits against foreign states. It provides,

> Notwithstanding any other provision of law, . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28 . . . .

28 U.S.C. § 1610 note. "That provision does not speak" to jurisdictional immunity from suit, but instead "concerns the rights of persons who already have in hand valid

judgments against terrorist parties to recover assets in satisfaction of those judgments." *Taliban*, 101 F.4th at 9; *see Vera v. Argentaria*, 946 F.3d 120, 133 (2d Cir. 2019) (holding TRIA "provides for federal court jurisdiction over execution and attachment proceedings involving the assets of a foreign sovereign . . . only where 'a valid judgment has been entered' against the sovereign"). Or put otherwise, TRIA expands exceptions to execution immunity where the FSIA's jurisdictional requirements have already been satisfied. The United States agreed with PDVSA's position in several briefs. U.S. *Caballero* Br., D.E. 310-1 at 11; U.S. Br., *In re Terrorist Attacks on September 11, 2001*, No. 03-md-01570 (S.D.N.Y. Feb. 11, 2022), D.E. 7661; *see Helmerich*, 581 U.S. 181 (explaining that the views of the United States in this area demand "special attention").

Indeed, if TRIA did not presume jurisdictional immunity, and instead functioned as an independent source of subject-matter jurisdiction over a foreign state against which there is no judgment, then the words "based upon an act of terrorism . . . for which a party is not immune under [28 U.S.C. § 1605A]" would be superfluous. 28 U.S.C. § 1610 note; *see Taliban*, 101 F.4th at 11–12; *see also Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 374 (2009) (rejecting an expansive reading of Section 201(a)'s "notwithstanding clause" as displacing a provision in the Victims Protection Act that compensates victims with terrorism-related judgments against Iran as long as they

agree to relinquish any further claims)*; United States v. Holy Land Found. for Relief & Dev.*, 445 F.3d 771, 787 (5th Cir. 2006) ("We conclude that the 'notwithstanding' language [in TRIA] … appears to target statutory immunities to execution."); *Rubin v. Islamic Rep. of Iran*, 709 F.3d 49, 54 (1st Cir. 2013) ("[U]nder certain circumstances, TRIA permits the attachment of property that might otherwise be immune under the FSIA.").

Thus, recovery under TRIA requires the court to first have subject-matter jurisdiction over the foreign state. And as explained, the court has subject matter over the foreign state only if the plaintiff shows "an abrogation of immunity for—the defendant holding the assets," *i.e.*, jurisdictional immunity under the FSIA. *Taliban*, 101 F.4th at 9. Upon such a showing, and after securing a judgment over the defendant foreign state, TRIA would then permit the assertion of jurisdiction over certain assets.

Applied here, the Osios were required to first bring a new civil action against PDVSA and clear the FSIA's jurisdictional hurdle. A new suit was required because the Osios are seeking to use TRIA to hold PDVSA liable for their default judgments against Maduro, the Cartel, and the FARC. That "is a new action based on theories of relief that did not exist, and could not have existed, at the time the court entered [the default] judgment" against Maduro and the other defendants. *See Peacock*, 516 U.S. at 359 (holding that the court lacked ancillary jurisdiction over the plaintiff's

effort to enforce a judgment against a third party). Because the action against PDVSA is "in effect [a] suit[] involving a new party litigating the existence of a new liability," it is not "ancillary" but is instead an "independent civil action[]." *Jackson-Platts*, 727 F.3d at 1134 (internal quotation marks and citation omitted); *see* U.S. *Caballero* Br., D.E. 310-1 at 16 ("TRIA also does not provide ancillary jurisdiction to enforce judgments against a foreign state's assets that would overcome the jurisdictional immunities provided by the FSIA."). Next, the Osios were required to obtain a judgment against PDVSA showing that it is an "agency or instrumentality" of "a terrorist party." 28 U.S.C. § 1610 note. And their claim would have to be "based upon an act of terrorism." *Id.* If they cleared all those hurdles, *then* TRIA would have permitted the assertion of jurisdiction over assets without having to navigate the FSIA's immunity-from-execution requirement.

But the Osios did none of that. Instead, the Osios sued, and obtained default judgments against, Maduro and the other defendants. And now the Osios are trying to enforce those default judgments against PDVSA while evading the FSIA's presumption of immunity. Had the Osios sued PDVSA as a defendant in the underlying action, then the Osios undisputedly would have been required to show that an exception to immunity applies. *See Amerada Hess*, 488 U.S. at 434. But the District Court's decision permits the Osios to use TRIA as a workaround to the jurisdictional immunities protected by the FSIA.

Even more troubling, the Osios are seeking to use TRIA as a workaround amidst ongoing political strife in Venezuela, when PDVSA remains in the hands of the U.S.-recognized Venezuelan government that is opposing Maduro and his illegitimate regime. *E.g.*, *Lukoil*, 65 F.4th at 561. After securing a default judgment against Maduro, the Osios now seek to enforce that judgment against an instrumentality of the state that *opposes* Maduro. The enforcement of that judgment weakens the very government that seeks to prevent Maduro's further exercises of illegitimate power. At once, this course of conduct illustrates the purposes underlying the FSIA and illustrates why TRIA is not a pathway to strip a foreign state of the FSIA's protections.

The District Court did not offer an ounce of reasoning to support its assertion of jurisdiction. It engaged neither the FSIA nor TRIA's text. Nor did it consider whether its interpretation could be squared with *Stansell II*. And it did not engage any decisions from sister jurisdictions. Had it done so, it would have recognized the shortcomings of its approach.

In *Stansell II*, the issue was whether TRIA preempted Florida's "garnishment and execution statutes." 771 F.3d at 729. In holding that it does not, *Stansell II* explains that TRIA's "use of the word 'notwithstanding'" does not preempt Florida's requirement that property owners "are entitled to notice" before their property is "garnished or executed." *Id.* at 729–30. To do so, *Stansell II* further reasons, would

ignore the presumption "that preemption does not apply." *Id.* at 730 (citation omitted). That same reasoning applies here: (1) the FSIA *presumes* jurisdictional immunity and (2) thus, TRIA would only override the FSIA's jurisdictional protections if there were an express conflict between TRIA's text and the FSIA's text. *See Elahi*, 556 U.S. at 386; *Holy Land Found. for Relief & Dev.*, 445 F.3d at 787. But as explained, TRIA expressly exempts attachment immunity—it does not disturb the presumption against jurisdictional immunity.

The D.C. Circuit agrees. In *Does 1-7 v. Taliban*, the D.C. Circuit held that nothing in TRIA's text abrogates jurisdictional immunity and that TRIA instead "talks exclusively about *post-judgment* execution proceedings," which "necessarily presuppose a valid judgment arising out of a proper exercise of jurisdiction over the defendant against whom the judgment was obtained." 101 F.4th at 10 (emphasis added). There, the D.C. Circuit affirmed the district court's decision to quash of a writ of execution, which sought to obtain assets of the Afghan government held by the International Monetary Fund and World Bank, based on foreign-sovereign and organizational immunity. Relying on TRIA, the plaintiffs were seeking to enforce default judgments against the Taliban for terrorist-related activities. But the D.C. Circuit ruled that the IMF and World Bank were immune from jurisdiction under the FSIA and thus that the court had no jurisdiction over the plaintiffs' suit seeking to direct those entities to release a third party's assets to enforce a judgment against it.

The D.C. Circuit explained that "Section 201(a) of [TRIA] says nothing about creating jurisdiction in the first instance, whether over the defendants themselves or over third parties alleged to hold the defendants' assets." *Id.* "Given the FSIA's comprehensive and explicit regulation of jurisdiction over foreign sovereigns," the court of appeals "cannot assume that Congress abrogated these sovereigns' immunity from suit through other statutes without mentioning jurisdiction or their immunity expressly." *Id.* And even if another statute were ambiguous, "any statutory ambiguity concerning a waiver of foreign immunity outside the FSIA must be resolved in favor of its preservation." *Id.* at 12. After carefully parsing the TRIA and FSIA regimes, the Court ultimately concluded that, "[w]hile the TRIA provides a powerful tool for plaintiffs seeking to satisfy judgments based on acts of terrorism, that tool applies only to foreign states and international organizations once jurisdiction has been established over them." *Id.* at 15–16.

This Court should adopt the D.C. Circuit's reasoning. That approach is particularly appropriate here because the D.C. Circuit's rationale makes clear that the Second Circuit's recent decision to the contrary is incorrect. In *Havlish v. Taliban*, 2025 WL 2447193 (2d Cir. Aug. 26, 2025), two groups of plaintiffs sought to attach assets protectively blocked by the U.S. government and held at the Federal Reserve Bank of New York in the name of the Da Afghanistan Bank ("DAB"), Afghanistan's central bank. One group of plaintiffs sought to confirm a pre-

judgment attachment order on these funds to secure potential future judgments against the Taliban for its alleged role in the 1998 U.S. embassy bombings in East Africa. *Id.* at *1. The second group of plaintiffs, who already held judgments against the Taliban for its role in the September 11 terrorist attacks, sought turnover of the same funds to satisfy their judgments. *Id.*

The Second Circuit held that the DAB, as the central bank of Afghanistan, is an "agency or instrumentality" of a foreign state recognized by the U.S. government and so its assets in respect of the first group of plaintiffs are immune from attachment and execution under the FSIA. *Id.* at *7–13. As to the second group of plaintiffs, it held that TRIA abrogates FSIA immunity and provides an independent basis for subject-matter jurisdiction. *Id.* at *13–16. But the Second Circuit ultimately held that TRIA did not apply, and thus the plaintiffs could not attach the funds, because it found that DAB was not an "agency or instrumentality" of the Taliban under TRIA at the time its assets were blocked. Indeed, the Second Circuit noted that the President blocked the DAB's assets to "keep[] them out of the hands of the Taliban and other malign actors." *Id*. at *19 (internal citation and quotation omitted). The same is true for PDVSA. D.E. 310-2.

The Second Circuit's decision that TRIA abrogates FSIA immunity is incorrect, conflicts with this Court's prior reasoning in *Stansell II*, and endorses a misreading of TRIA that relies on an overbroad interpretation of "notwithstanding."

According to the Second Circuit, the phrase "[n]otwithstanding any other provision of law . . . carries great weight" and therefore "supersedes the FSIA's jurisdictional immunity provisions in addition to its execution immunity provisions." 2025 WL 2447193 at *14–15. But the D.C. Circuit identified the fatal flaw in that reading: it ignores TRIA's requirement that the "person *has* obtained a judgment against a terrorist party based upon an act of terrorism," 28 U.S.C. § 1610 note (emphasis added), which is the "substantive text that follows" and necessarily determines the "reach of the notwithstanding clause." *Taliban*, 101 F.4th at 11. Thus, TRIA applies only if the plaintiff enters court having "obtained" a judgment against a terrorist party and, then, asks the court to enforce *that judgment* against the terrorist party. *Id.* If the plaintiff has *obtained* a judgment against a terrorist party, then, of course, the court has already determined that the terrorist party is not immune under the FSIA and that it has jurisdiction to enter the judgment. But TRIA does not authorize subject-matter jurisdiction over a defendant that is immune from suit under the FSIA in the different circumstance where the plaintiff *seeks* to obtain, and thus does not already have, a judgment in hand. In that circumstance, the plaintiff must still establish that the court has jurisdiction.

Applied here, although the Osios have obtained a judgment against members of the Maduro regime, they have not obtained a judgment against PDVSA and instead are seeking to obtain one from the District Court. In that circumstance, the

Osios are required to establish an independent basis for the District Court's subject-matter jurisdiction over PDVSA before they can obtain a judgment against PDVSA holding PDVSA liable for the Maduro regime's offenses. Because the Osios have failed to do so, the District Court lacks jurisdiction.

## II. THE DISTRICT COURT'S INTERPRETATION OF TRIA CANNOT BE SQUARED WITH THE POLITICAL QUESTION DOCTRINE

After concluding that TRIA provided an independent basis for the assertion of subject-matter jurisdiction and the FSIA did not apply, the District Court remanded the issue of whether PDVSA is an "agency or instrumentality" of the Maduro regime under TRIA to the Magistrate Judge with instructions to apply *Stansell II*, 771 F.3d 713. D.E. 583 at 3–4. The District Court's application of TRIA violates the political question doctrine.

PDVSA is Venezuela's wholly owned national oil company. It is thus owned and controlled by the National Assembly, which the United States recognizes as the only legitimate government of Venezuela. Statement of Interest at 1, *MUFG Union Bank*, No. 19-cv-10023 (S.D.N.Y. Aug. 29, 2025), D.E. 393. In contrast, it is the "longstanding position" of the United States that "the government of Nicolas Maduro, who purports to serve as president of Venezuela," is illegitimate. *LukOil*, 65 F.4th at 561.

Plaintiffs bring suit under TRIA having secured a judgment against the Maduro regime. PDVSA has continually sought to assert its immunity under the

FSIA because it is an "agency or instrumentality" of Venezuela. The District Court has not only ignored these assertions of sovereignty, but it has now ordered the Magistrate Judge to determine whether PDVSA is, in fact, an "agency or instrumentality" of the illegitimate Maduro regime. Put simply, the District Court recognizes that *if* it has jurisdiction under TRIA, then it is because PDVSA is an "agency or instrumentality" of the illegitimate Maduro regime. At a minimum, that question "is connected to a broader controversy over the legitimate political leadership of Venezuela." *LukOil*, 65 F.4th at 561. The District Court had no authority to ask that question. And it has no power to answer it.

The "Supreme Court has repeatedly held that it is the role of the political branches, not the courts, to identify the legitimate political leadership of a foreign country." *Id.* at 562. In asking whether PDVSA's assets can be attached to enforce a judgment against the Maduro regime, the District Court necessarily asks whether the Maduro regime is Venezuela's official government. That is because, the only way PDVSA—which is wholly owned by Venezuela—is an "agency or instrumentality" of Maduro is if Venezuela is controlled by Maduro. But the U.S. State Department has made it clear, the Maduro regime is illegitimate—the National Assembly controls Venezuela, and by extension, PDVSA.

The remand order, which the District Court deemed necessary to determine whether it can assert jurisdiction under TRIA, thus invites the Judiciary to determine

"which governments are legitimate in the eyes of the United States and which are not." *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 14 (2015). Federal courts have no such power. "Political recognition is exclusively a function of the Executive." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410 (1964), *superseded on other grounds by statute*, 22 U.S.C. § 2370(e)(2). The District Court's remand order inherently questions the Executive's determination. That violates the political question doctrine. And if the District Court were to assert jurisdiction based on the Magistrate Judge's recommendation that PDVSA is an instrumentality of the Maduro regime, that would violate the political question doctrine too.

*LukOil* makes this clear. There, "the Maduro entity" specifically asked this Court for a remand that would "allow [a] district court to conduct a further factual inquiry into 'who may properly represent the interests of [PDVSA] in light of the complex and ever-changing political situation within Venezuela." *LukOil*, 65 F.4th at 563. This Court forcefully rejected that request: "federal courts are not empowered to decide what is consistent with American foreign-policy interests. The district court would not have jurisdiction to conduct the requested inquiry on remand." *Id.* at 563–64.

Without providing any reasoning, the District Court flatly asserted that the "Political Question doctrine does not prohibit the Court from adjudicating the issues

in this proceeding." D.E. 583 at 3. And then it remanded "this action to Judge Torres for an evidentiary hearing on whether . . . [PDVSA] is an agency or instrumentality of the Maduro regime." *Id.* As explained, this order violates the political question doctrine twice over. What is more, the order illustrates every issue that the political question doctrine guards against.

"Recognition is a topic on which the Nation must speak with one voice. That voice must be the President's." *Kerry*, 576 U.S. at 14 (citation modified). The District Court's assertion of jurisdiction would conflict with the "President's exclusive recognition power" and potentially undercut the President's ability "to be effective in negotiations," as it may not "be evident to his counterparts abroad that he speaks for the Nation on the precise question." *Id.* at 17.

While Congress has a role in foreign affairs and, sometimes, shares power with the Executive Branch, the Judiciary has no responsibility whatsoever in this field. This has been so for over two centuries: "[T]he courts of the union must view [a] newly constituted government as it is viewed by the legislative and executive departments of the government of the United States." *United States v. Palmer*, 16 U.S. 610, 643 (1818). "Who is the sovereign, *de jure or de facto*, of a territory is not a judicial, but is a political question, the determination of which by the legislative and executive departments of any government conclusively bids the judges." *Jones v. United States*, 137 U.S. 202, 212 (1890).

These issues cascade here: "Recognized sovereigns may sue in United States courts, and may benefit from sovereign immunity when they are sued." *Kerry*, 576 U.S. at 12 (citation omitted). The United States has recognized the National Assembly as a sovereign. Letter from Amb. Michael G. Kozak, *MUFG Union Bank*, No. 19-cv-10023 (S.D.N.Y. Aug. 29, 2025), D.E. 393-1. As the recognized government of Venezuela, it is fighting at home to restore democracy. As this battle wages on, a federal district court threatens to revoke its recognized status in United States courts, leaving it vulnerable and exposed to legal liability based on the acts of an illegitimate regime.

This approach not only harms Venezuela, but it also negatively impacts the interests of the United States. It threatens to undercut the Executive Branch's credibility with foreign nations. It threatens to interfere with the Executive Branch's ability to negotiate with foreign nations. It threatens to interfere with the Executive Branch's authority to designate which particular foreign governments should be subject to suit and attachment under the FSIA based on their support of terrorism. It threatens "the reciprocal treatment of the United States and its extensive overseas property holdings." U.S. *Caballero* Br., D.E. 310-1 at 2. The list could go on. But, to the extent that this Court has any misgivings or questions about how it should construe TRIA, it should solicit the views of the United States.

## III. THE DISTRICT COURT ERRED IN DECIDING THAT A FOREIGN STATE, WHICH IS NOT THE JUDGMENT DEBTOR, HAS BEEN PROPERLY SERVED WITH PROCESS IN A POST-JUDGMENT EXECUTION ACTION IF THE FOREIGN STATE HAD ACTUAL NOTICE OF THE ACTION

Personal jurisdiction over a foreign state, including its agencies and instrumentalities, exists only where the requirements for subject-matter jurisdiction are met and "service has been made under section 1608." 28 U.S.C. § 1330(b). Because the District Court lacked subject-matter jurisdiction, this Court could reverse the District Court's decision also for lack of personal jurisdiction. But this Court could reverse for lack of personal jurisdiction for an additional reason: service was not made under Section 1608 of the FSIA, even according to the District Court's own findings.

The FSIA's service provisions in Section 1608 apply to post-judgment execution actions against a foreign state's assets where the foreign state is not the judgment debtor. *See* U.S. *Caballero* Br., D.E. 310-1 at 25. Although the District Court correctly determined that the Osios had failed to comply with the FSIA's service provisions, the District Court erred in determining that service of process would nonetheless be proper if PDVSA had actual notice of the Osios' enforcement actions. *See* D.E. 583 at 3–4.

The District Court's decision is incorrect, and should be reversed, because the District Court applied the wrong standard in assessing whether service of process is

proper. Indeed, the District Court's decision conflicts with well-established decisions of this Court, which hold that "actual notice alone [i]s not enough to allow the court personal jurisdiction over a party." *Prewitt Ent. v. OPEC*, 353 F.3d 916, 924 n.14 (11th Cir. 2003); *see Harrison*, 587 U.S. at 18–19 (holding that defects in service require reversal). Because the Osios failed to satisfy the correct legal standard for service of process as set forth in the FSIA, this Court should reverse.

### A. The FSIA Establishes the Process by Which Foreign States, Including Their Agencies and Instrumentalities, Are Served with Judicial Process

The FSIA establishes the comprehensive framework by which "service in the courts of the United States and of the States shall be made upon an agency or instrumentality of foreign states." 28 U.S.C. § 1608(b); *see Harrison*, 587 U.S. at 18–19; *Prewitt*, 353 F.3d at 924; *LS Energia Inc. v. Corporacion Electrica Nacional S.A.*, 2023 WL 122196, at *1 (S.D. Fla. Jan. 6, 2023) (applying *Harrison*'s "strict requirements" instruction to service on "agency or instrumentality of a foreign state"). The purpose of these procedures is to ensure that the foreign state has proper notice of litigation in the United States brought against a foreign state, or against a foreign state's assets, so that the foreign state has an adequate opportunity to appear before federal and state courts to assert its defenses, including sovereign immunity. Here, adherence to these procedures is all the more important when dealing with a

U.S.-recognized government and its agencies and instrumentalities operating in exile.

The United States has made clear that proper service under the FSIA "is a consequential act in litigation against foreign states." U.S. *Caballero* Br., D.E. 310-10 at 25. As the United States has explained, "proper service is necessary to establishing personal jurisdiction over a foreign state." *Id.* (citing 28 U.S.C. § 1330(b)). The United States has further explained that service under Section 1608 is also necessary before a default judgment can be enforced against a foreign state pursuant to the execution or attachment of foreign-state assets. *Id.* (citing 28 U.S.C. §§ 1608(e), 1610(c)).

### B. The Procedures for Service of Process Are Hierarchical and Must Be Strictly Followed

The FSIA provides three hierarchical procedures for service of process on foreign states' agencies or instrumentalities that must be strictly followed. *See* 28 U.S.C. §§ 1608(b); Fed. R. Civ. P. 4(j)(1) ("A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608."); *Commodities & Mins. Enter. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 812 (2d Cir. 2022) (explaining requirements for service on an agency or instrumentality of a foreign state); *see also Harrison*, 587 U.S. at 19 (reversing default judgment based on improper service under the FSIA). Under the first means, the Osios were required to attempt to serve PDVSA by delivering "a copy of the

summons and complaint in accordance with any special arrangement for service between the [Osios] and [PDVSA]." 28 U.S.C. § 1608(b)(1). Because no such special arrangement exists here, the Osios were required to proceed to the second means.

Under the second means, the Osios were required to serve PDVSA via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638 ("Hague Service Convention"), "an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(b)(2). In acceding to the Hague Service Convention, Venezuela objected to service by mail and required all documents to be served with Spanish translation. *See* Hague Service Convention, art. 10; Decl. 1 & 3 of Venezuela to the Hague Service Convention; *see also Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017) ("[I]n cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law."). So, to properly serve PDVSA under the second means, the Osios were required to (1) attempt service through Venezuela's central authority, (2) wait a period of no less than six months, (3) make every reasonable effort to obtain a certificate of service from Venezuela's central authority, and (4) absent such a certificate, serve the defendant

in a manner consistent with Venezuelan law. *See Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, 23 F.4th 1036, 1038–42 (D.C. Cir. 2022), *cert. denied*, 143 S. Ct. 113 (2022).

If the Osios still could not effect service under this means, then they would have to proceed to the third means of service prescribed in FSIA. *See* 28 U.S.C. § 1608(b)(3). This means permits service by letters rogatory, certain mail dispatched by the Clerk (which would be inapplicable here), or another form of service ordered by the District Court consistent with Venezuelan law. *Id.* These forms of service are only permitted if reasonably calculated to give actual notice. *Id.*; *see Harrison*, 587 U.S. at 12.

### C. The District Court Correctly Found that the Osios Failed to Serve PDVSA in Accordance with the FSIA's Service Requirements

The District Court found that the Osios failed to comply with the FSIA's service requirements. That decision was correct, so that is the end of the matter. This Court lacks personal jurisdiction over PDVSA.

As explained above, on April 17, 2024, the Magistrate Judge entered an order "find[ing] no cause why notice was not provided to the title owner and the party in possession of the [Learjet]" and directing the Osios to certify "conferral with any such persons/entities" and "service of the motion on any known interested parties." D.E. 102. The Osios subsequently certified that they had "mailed a copy of" their *ex parte* motion for a writ of garnishment to PDVSA "as provided in Fla. Stat.

§ 56.21" and that "an additional copy was served in compliance with Rule 4, Federal Rules of Civil Procedure and statutes incorporated by reference there." D.E. 105 at 1–2. The Osios did not provide any details as to what such service under Rule 4 entailed. They also certified that although they had conferred with the entity that was holding the Learjet, they did not confer with PDVSA. *Id.* at 2.

This perfunctory attempt at service was woefully insufficient to satisfy the FSIA's service requirements. As an initial matter, the FSIA requires the Osios to serve PDVSA with "a copy of the summons and complaint." 28 U.S.C. § 1608(b)(1). Below, the Osios did not cite any authority to support the contention that their motion would qualify as an acceptable substitute. *Cf. De Gazelle Grp., Inc. v. Establishment*, 817 F.3d 747, 748 (11th Cir. 2016) (requiring service of summons to exercise personal jurisdiction); *Harrison*, 587 U.S. at 19 (vacating default judgment for failure to strictly comply with the FSIA's service provisions). But even if it did, the motion was not properly served. However styled, the motion was the first judicial document "legally sufficient to charge [PDVSA] with notice of [this] pending action." *Volkswagenwerk AG v. Schlunk*, 486 U.S. 694, 700 (1988). So, the Osios were required to serve their motion on PDVSA in accordance with the FSIA as the applicable law governing service of process.

But, as the District Court found, the Osios failed to do so. The Osios did not provide any certificate from Venezuela's Central Authority or any other evidence

suggesting that they complied with the Hague Service Convention. *See* D.E. 105 at 1–2. Although the Osios also claimed to have served PDVSA by mail under the service provisions of Florida's garnishment statute, those provisions are preempted by conflicting federal law (the FSIA and the Hague Service Convention) and therefore do not apply. *Water Splash, Inc.*, 581 U.S. at 273 ("[T]he Hague Service Convention specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies." (citation modified)); *Schlunk*, 486 U.S. at 699 (explaining that federal law "pre-empts inconsistent methods of service prescribed by state law); *see* U.S. Const., Art VI, cl. 2; Fed. R. Civ. P. 69(a)(1) (providing that a money judgment is enforced by following the execution "procedure of the state where the court is located, *but a federal statute governs to the extent it applies*" (emphasis added)). Absent effective service and an exception to PDVSA's presumptive immunity, the District Court lacked personal jurisdiction to hold PDVSA liable for the default judgment. *See* 28 U.S.C. § 1330(b).

The Osios have also filed several certificates with the District Court in which they claim to have served writs of garnishment upon PDVSA by mail to an address in Venezuela and "in compliance with Rule 4." *See, e.g.*, D.E. 484, 485, 486, 487, 501, 514, 515, 516, 517, 518, 519. PDVSA is unaware of the writs' contents because, like so many of the Osios' filings in this action, the writs are under seal and, contrary to the Osios' claims below, the Osios did not serve PDVSA with the

writs. As an initial matter, the District Court's sealing of at least seventy-four filings to date was an abuse of discretion because it violates PDVSA's right to fair notice and "[t]he common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *See Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (internal citations omitted) (holding that district court "abused its discretion" by sealing documents without sufficient cause). But the Osios' purported service is also improper because, like their purported service of the *ex parte* motion, their service of the writs does not comply with the FSIA's service requirements or the Hague Service Convention. Nor would any such service give notice to PDVSA when PDVSA's Venezuelan facilities have been illegally usurped by representatives of the illegitimate Maduro regime. *See* D.E. 310 § II. As explained above, many of the opposition government's members are in exile. *Venezuela: Political Crisis and U.S. Policy*, Congressional Research Service (Sept. 8, 2025).

**D. Actual Notice Is the Incorrect Legal Standard for Assessing Whether Service of Process Is Proper**

The District Court nonetheless determined that service of process would be proper, and thus effective to confer personal jurisdiction, if PDVSA had actual notice of the Osios' enforcement proceedings. *See* D.E. 583 at 3–4. Then the District Court remanded the matter to the Magistrate Judge for an evidentiary hearing to resolve a factual dispute about whether PDVSA had actual notice. *Id.* But the District Court

did not explain, or otherwise cite any authority to support, its decision to adopt an actual-notice rule. Nor could it, because the rule applied by the District Court is incorrect as a matter of law. This Court has long held that "actual notice alone [i]s not enough to allow the court personal jurisdiction over a party." *Prewitt Ent.*, 353 F.3d at 924 n.14.

To the extent the Osios contend that attempting service under the Hague Service Convention would be futile given the political situation in Venezuela, that circumstance would not excuse their non-compliance. Article 14 of the Hague Service Convention provides that, should "[d]ifficulties arise," service may be effected "through diplomatic channels," as was done in a similar action. *See* Ex. A. to Ltr. To Hon. S. Netburn, *Stansell v. FARC*, No. 16-mc-405 (S.D.N.Y. June 16, 2023), D.E. 525-1 (noting service effected through diplomatic channels on "the Presidential Commissioner for Foreign Relations," an "accredited representative" of the U.S.-recognized National Assembly of Venezuela). Because there is no dispute that the Osios failed to comply with the FSIA's service requirements, no evidentiary hearing is necessary. The District Court lacks personal jurisdiction over PDVSA.

### E. By Departing from the FSIA, the District Court's Novel Rule Threatens Harm to the United States' Treatment as a Litigant in Courts Abroad

The District Court did not explain its decision to adopt a new rule for serving process on a foreign state's agency or instrumentalities. But to the extent its decision

suggests that strict adherence to the FSIA's service provisions is unnecessary or unfair when the agency or instrumentality has actual notice of the enforcement proceedings, the Supreme Court has rejected such a suggestion. In *Harrison*, the Supreme Court made clear that the FSIA's service rules are one of the "circumstances in which the rule of law demands adherence to strict requirements even when the equities of a particular case may seem to point in the opposite direction." 587 U.S. at 18–19. There, the Supreme Court vacated the plaintiffs' default judgment based on a "highly technical" and "belatedly raised" argument that service of process was defective under the FSIA. *Id.* The Supreme Court acknowledged that enforcing compliance with the FSIA's service provisions "may seem like an empty formality" but nonetheless held that it was necessary. *Id.*

In a recent Statement of Interest filed in a similar case, the United States explained that strict adherence to the FSIA's service requirements is necessary because it can have sensitive diplomatic implications. U.S. *Caballero* Br., D.E. 310-1 at 28. According to the United States, it has substantial diplomatic interests in ensuring that foreign states are served properly before they are required to appear in U.S. courts. The United States explained that it "will not appear in foreign litigation unless proper service of process [i]s provided consistent with the principles of customary international law concerning service on foreign states." *Id.* It further explained that strict adherence to the FSIA is particularly important in situations

such as this one, where "a foreign state is accused of being an 'agency or instrumentality' of terrorists." *Id.* In the United States' view, "[p]roviding service of process consistent with the requirements of the FSIA is the best way to ensure [] foreign countries provide the United States the same protections it would expect in [] foreign courts." D.E. 310-1 at 28–29. But by departing from the FSIA, the District Court's novel rule threatens harm to the United States' treatment as a litigant in courts abroad. The District Court did not offer any justification for this outcome.

## **CONCLUSION**

For all these reasons, PDVSA respectfully requests that this Court reverse the District Court's decision, vacate the District Court's July 1 Order, dissolve the writs of garnishment, vacate the turnover judgment, deny all pending turnover motions, and dismiss the Osios' action with prejudice.

Dated: September 18, 2025

Respectfully submitted,

By: /s/ *Claire A. DeLelle*

Claire A. DeLelle
Danielle S. Tarin
Kufere J. Laing
White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C., 20005
claire.delelle@whitecase.com
danielle.tarin@whitecase.com
kufere.laing@whitecase.com
(202) 626-3600

Dylan Fay
White & Case LLP
200 S Biscayne Blvd.
Miami, FL 33131
dylan.fay@whitecase.com
(305) 371-2700

*Counsel for Petróleos de Venezuela, S.A.*

**CERTIFICATE OF COMPLIANCE**

This Brief complies with the type-face and volume limitations of Federal Rules of Appellate Procedure 32(a)(5)–(7) and this Court's local rules because it contains 12,998 words, excluding parts of the brief exempted by Rule 32(f) and this Court's local rules, and has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ *Claire A. DeLelle*
Claire A. DeLelle

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of September 2025, the foregoing was electronically filed through this Court's CM/ECF system and a copy was electronically served through the CM/ECF system on all registered counsel of record.

/s/ *Claire A. DeLelle*
Claire A. DeLelle