**No. 25-12365**

# United States Court of Appeals

*for the*

# Eleventh Circuit

MEUDY ALBÁN OSIO, in her personal capacity and in her capacity as the personal representative of the Estate of Fernando Alberto Albán, FERNANDO ALBÁN OSIO, MARIA FERNANDA ALBÁN OSIO,

*Plaintiffs-Appellees,*

– v. –

NICOLÁS MADURO MOROS, *et al.*,

*Defendants,*

PETRÓLEOS DE VENEZUELA, S.A. (PDVSA),

*Respondent-Appellant,*

OLIVIA PESCATORE, *et al.*,

*Third Party Defendants,*

KEITH STANSELL, *et al.*,

*Claimants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(HONORABLE DARRIN P. GAYLES)

## REPLY BRIEF OF RESPONDENT/APPELLANT PETRÓLEOS DE VENEZUELA, S.A.

CLAIRE A. DELELLE
DANIELLE S. TARIN
ALISON F. PERRY
KUFERE J. LAING
WHITE & CASE LLP
701 13th Street, NW
Washington, DC 20005
(202) 626-3600

W. DYLAN FAY
WHITE & CASE LLP
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
(305) 371-2700

*Counsel for Petróleos de Venezuela, S.A.*

**AMENDED CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellant Petróleos de Venezuela, S.A. certifies the following individuals and entities have an actual or potential interest in the outcome of the appeal:

1. Albán Osio, Fernando (Plaintiff)
2. Albán Osio, Maria Fernanda (Plaintiff)
3. Albán Osio, Meudy (Plaintiff)
4. Anderson, Cloe M. (Counsel for Plaintiffs)
5. Anschtz Gmbh (Claimant)
6. Ara, Diego Perez (Counsel for Garnishee ENI Trading & Shipping, Inc.)
7. Baker & McKenzie, LLP (Counsel for Garnishee Shell Trading (US) Company and Claimant Anschtz Gmbh)
8. Baker Botts, LLP (Counsel for Garnishees Repsol E&P Capital Markets US, LLC; Repsol E&P USA Holdings; Repsol Energy North America-Canada Partnership; Repsol Offshore E&P USA, Inc.; Repsol Oil & Gas USA, LLC; Repsol Trading USA, LLC; Repsol USA Holdings, LLC; and Halliburton Company)

9. Baker Hostetler, LLP (Counsel for Garnishee Weatherford International, LLC)

10. Bariven, S.A. (Subsidiary of Respondent-Appellant Petróleos de Venezuela, S.A.)

11. Bernstein, Benedict S. (District Court Counsel for Petróleos de Venezuela, S.A.)

12. Bianchi, Jamie A. (District Court Counsel for Petróleos de Venezuela, S.A.; Petrocedeño, S.A.; Petromonagas, S.A.; Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer, y Comunas, Banco Universal, C.A.)

13. Blank Rome, LLP (Counsel for Garnishee Pierce Manufacturing, Inc.)

14. Blasi, Fernando (Member of the Counsel for the Administration and Protection of the Assets of the Republic of Venezuela (Consejo de Administración y Protección de Activos de la República de Venezuela))

**15. Boccuzzi Jr., Carmine D. (Counsel for Garnishee JP Morgan Chase Bank, N.A.)**

16. Brackett, Alex J. (Counsel for Garnishee Vitol Inc.)

17. Braverman Greenspun, P.C. (Counsel for Garnishee JP Morgan Chase Bank, N.A.)

18. Caballero, Antonio (Third Party Defendant)

19. Cárdenas, Julián (Member of the Ad Hoc Administrative Board of Petróleos de Venezuela, S.A.)
20. Cartel of the Suns (Defendant)
21. Citibank, N.A. (Garnishee)
22. Citigroup Inc. (C) (Parent of Garnishee Citibank, N.A.)
23. Coffey, Melissa B. (Counsel for Garnishees Global Financial Management Services; Global Oil Delivery Systems, LLC; Global Oil Financial Services, LLC; and Global Oil Terminals, LLC)
24. Cooper, Brenton Hayes (Counsel for Garnishees Repsol E&P Capital Markets US, LLC; Repsol E&P USA Holdings; Repsol Energy North America-Canada Partnership; Repsol Offshore E&P USA, Inc.; Repsol Oil & Gas USA, LLC; Repsol Trading USA, LLC; Repsol USA Holdings, LLC; and Halliburton Company)
25. Council for the Management and Protection of Assets of the Republic of Venezuela (Consejo de Administración y Protección de Activos de la República de Venezuela) ("CAPA")
26. Crow, Heather Folsom (Counsel for Garnishees Schlumberger Limited and Schlumberger Technology Corporation)
27. Davis, Benjamin Cody (Counsel for Claimant Anschtz Gmbh)

28. DeLelle, Claire (Appellate Counsel for Respondent-Appellant Petróleos de Venezuela, S.A.) (District Court Counsel for Petrocedeño, S.A.; Petromonagas, S.A.; Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer, y Comunas, Banco Universal, C.A.)
29. Eni Petroleum Co. Inc. (Garnishee)
30. Eni S.p.A. (E) (Parent of Garnishees Eni Petroleum Co. Inc.; Eni Oil & Gas Inc.; Eni Trading & Shipping, Inc.; and Versalis Americas Inc.)
31. Eni Trading & Shipping, Inc. (Garnishee)
32. Esposito, Michael Roy (Counsel for Garnishee Pierce Manufacturing Inc.)
33. Fay, W. Dylan (Appellate Counsel for Respondent-Appellant Petróleos de Venezuela, S.A.) (District Court Counsel for Petrocedeño, S.A.; Petromonagas, S.A.; Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer, y Comunas, Banco Universal, C.A.
34. Feigenbaum, Steven B. (Former Counsel for Garnishee JP Morgan Chase Bank, N.A.)
35. Floch, Brandon Scott (Counsel for Garnishees Valero Energy Corporation and Valero Marketing and Supply Company)

36. Foley & Lardner LLP (Counsel for Garnishees Global Financial Management Services; Global Oil Delivery Systems, LLC; Global Oil Financial Services, LLC; and Global Oil Terminals, LLC)
37. Fuerzas Armada Revolucionarias De Columbia (Defendant)
38. Gayles, the Honorable Darrin P. (United States District Court Judge)
39. Global Financial Management Services (Garnishee)
40. Global Oil Delivery Systems, LLC (Garnishee)
41. Global Oil Financial Services, LLC (Garnishee)
42. Global Oil Terminals, LLC (Garnishee)
43. Goicoechea, Yon (Member of CAPA)
44. Gonsalves, Marc (Third Party Defendant/Claimant)
45. Greenberg Traurig (Counsel for Garnishee JP Morgan Chase Bank, N.A.)
46. Guttman, Jamie D. (Counsel for Plaintiffs)
47. Halliburton Company (HAL) (Garnishee)
48. Harnwell-Davis, Natasha (Counsel for Plaintiffs-Appellees)
49. Holladay, Sara F. (Counsel for Garnishee Vitol Inc.)
50. Houston Refining LP (Garnishee)
51. Howes, Thomas (Third Party Defendant/Claimant)
52. Janis, Christopher (Third Party Defendant/Claimant)

53. Janis, Jonathan (Third Party Defendant/Claimant)

54. Janis, Judith (Third Party Defendant/Claimant)

55. Janis, Michael (Third Party Defendant/Claimant)

56. Jimenez, Marcos Daniel (Counsel for Respondent Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer, y Comunas, Banco Universal, C.A.)

57. JP Morgan Chase & Co. (JPM) (Parent of Garnishee JP Morgan Chase Bank, N.A.)

58. JP Morgan Chase Bank, N.A. (Garnishee)

59. Klein, Jonathan Samuel (Former Counsel for Plaintiffs)

60. Korvick, Tony P. (Counsel for Third Party Defendants/Claimants)

61. Laing, Kufere J. (Appellate Counsel for Respondent-Appellant Petróleos de Venezuela, S.A.)

62. Lakatos, Alex C. (Counsel for Plaintiffs)

63. Lara, Iván (Member of the Ad Hoc Administrative Board of Petróleos de Venezuela, S.A.)

64. Lash & Goldberg, LLP (Counsel for Garnishees Houston Refining LP; Lyondell Chemical Company; and Lyonell Refining Company, LLC)

65. LDC Supply International, LLC (Garnishee)

66. Leon Cosgrove, LLC (Counsel for Garnishee ENI Trading & Shipping, Inc.)

67. Leon, Derek Eduardo (Counsel for Garnishee ENI Trading & Shipping, Inc.)

68. Lerner, Joshua D. (Counsel for Garnishee StoneX Group, Inc.)

69. Lisko, David John (Counsel for Garnishee Citibank, N.A.)

70. Lyondell Chemical Company (Garnishee)

71. Lyondell Refining Company, LLC (Garnishee)

72. LyondellBasell Indus. N.V. (LYB) (Parent of Garnishees Houston Refining LP; Lyondell Chemical Company; and Lyondell Refining Company, LLC)

73. M&T Bank Corporation (MTB) (Garnishee)

74. Maduro Moros, Nicolás (Defendant)

75. Mahaffey, Michael (Counsel for Respondents Petrocedeño, S.A.; Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer, y Comunas, Banco Universal, C.A.)

76. Manzo, Sofia (Counsel for Respondent Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer, y Comunas, Banco Universal, C.A.)

77. Marcano, Gustavo (Coordinator of CAPA)

78. Marcus Neiman, Rashbaum, & Pineiro LLP (Counsel for Garnishees Valero Energy Corporation and Valero Marketing and Supply Company)
79. Mark Pollack Law PA (Counsel for Defendant Sunstate Bank)
80. Mayer Brown, LLP (Counsel for Plaintiffs)
81. McGuire Woods, LLP (Counsel for Garnishee Vitol Inc.)
82. Medina, Horacio (Chairman of the Ad Hoc Administrative Board of Petróleos de Venezuela, S.A.)
83. Medlock, Stephen M. (Counsel for Plaintiffs)
84. Millan, Carlos (Member of CAPA)
85. Moreno Perez, Maikel Jose (Defendant)
86. Neiman, Jeffrey Adam (Counsel for Garnishees Valero Energy Corporation and Valero Marketing and Supply Company)
87. Oshkosh Corporation (OSK) (Parent of Garnishee Pierce Manufacturing Inc.)
88. Padrino Lopez, Vladimir (Defendant)
89. Parrish, Jimmy D. (Counsel for Garnishee Weatherford International, LLC)
90. Patricios, Leon Nicholas (Counsel for Antonio Caballero)
91. PBF Energy Inc. (PBF) (Garnishee)

92. **Perry, Alison F. (Appellate Counsel for Respondent-Appellant Petróleos de Venezuela, S.A.)**
93. Pescatore, Jada (Third Party Defendant/Claimant)
94. Pescatore, Jarrod (Third Party Defendant/Claimant)
95. Pescatore, John (Third Party Defendant/Claimant)
96. Pescatore, Jordan (Third Party Defendant/Claimant)
97. Pescatore, Josh (Third Party Defendant/Claimant)
98. Pescatore, Olivia (Third Party Defendant/Claimant)
99. Pescatore, Richard (Third Party Defendant/Claimant)
100. Petrocedeño, S.A. (Subsidiary of Respondent-Appellant Petróleos de Venezuela, S.A.)
101. Petróleos de Venezuela, S.A. (Respondent-Appellant)
102. Petroleum Marketing International (Subsidiary of Respondent-Appellant Petróleos de Venezuela, S.A.)
103. Petromonagas, S.A. (Subsidiary of Respondent-Appellant Petróleos de Venezuela, S.A.)
104. Petropiar, S.A. (Subsidiary of Respondent-Appellant Petróleos de Venezuela, S.A.)
105. Pierce Manufacturing Inc. (Garnishee)

106. Pineiro, Michael Anthony (Counsel for Garnishees Valero Energy Corporation and Valero Marketing and Supply Company)
107. PNC Bank, N.A. (PNC) (Garnishee)
108. Pollack, Mark Elliot (Counsel for Defendant Sunstate Bank)
109. Porter & Korvick, P.A. (Counsel for Third Party Defendants/Claimants)
110. Porter, Newton Patrick (Counsel for Third Party Defendants/Claimants)
111. Prada, Ricardo (Member of the Ad Hoc Administrative Board of Petróleos de Venezuela, S.A.)
112. Pruitt & Pruitt, P.A. (Counsel for Garnishee PNC Bank, N.A.)
113. Pruitt, William Earnest (Counsel for Garnishee PNC Bank, N.A.)
114. Repsol E&P Capital Markets US, LLC (Garnishee)
115. Repsol E&P USA Holdings (Garnishee)
116. Repsol Energy North America-Canada Partnership (Garnishee)
117. Repsol Offshore E&P USA, Inc. (Garnishee)
118. Repsol Oil & Gas USA, LLC (Garnishee)
119. Repsol Trading USA, LLC (Garnishee)
120. Repsol USA Holdings, LLC (Garnishee)
121. Reverol Torres, Nestor Luis (Defendant)

122. Riccio, L. Andrew Stern (Counsel for Garnishee Shell Trading (US) Company)

123. Rosneft Trading, S.A. (Garnishee)

124. Rothfeld, Charles (Counsel for Plaintiffs-Appellees)

125. Rumberger Kirk & Caldwell (Counsel for Garnishee StoneX Group, Inc.)

126. Saab, Tarek William (Defendant)

127. Salky, Mark Allan (Counsel for Garnishee JP Morgan Chase Bank, N.A.)

128. Scale Law Partners, LLC (Counsel for Plaintiffs)

129. Schlumberger Limited (SLB) (Garnishee)

130. Schlumberger Technology Corporation (Garnishee)

131. Shehadeh Giannamore, PLLC (Counsel for Defendant U.S. Century Bank)

132. Shehadeh, Jalal (Counsel for Defendant U.S. Century Bank)

133. Shell plc (SHEL) (Parent of Garnishee Shell Trading (US) Company)

134. Shell Trading (US) Company (Garnishee)

135. Stallings, Stephen Sean (Counsel for Respondent Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer, y Comunas, Banco Universal, C.A.)

136. Stansell, Keith (Third Party Defendant/Claimant)

137. StoneX Group, Inc. (SNEX) (Garnishee)

138. Strauch, Michael Edward (Counsel for Garnishees Houston Refining LP; Lyondell Chemical Company; and Lyonell Refining Company, LLC)

139. Sunstate Bank (Defendant)

140. Tarin, Danielle (Appellate Counsel for Respondent-Appellant Petróleos de Venezuela, S.A.) (District Court Counsel for Petrocedeño, S.A.; Petromonagas, S.A.; Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer, y Comunas, Banco Universal, C.A.)

141. The Kullman Firm (Counsel for Garnishees Schlumberger Limited and Schlumberger Technology Corporation)

142. Torres, the Honorable Edwin G. (United States Magistrate Judge)

143. Trahan, Blair E. (District Court Counsel for Petróleos de Venezuela, S.A.)

144. U.S. Century Bank (Defendant)

145. USCB Financial Holdings, Inc. (USCB) (Parent of Defendant U.S. Century Bank)

146. Valero Energy Corporation (VLO) (Garnishee)

147. Valero Marketing and Supply Company (Garnishee)

148. Versalis Americas Inc. (Garnishee)

149. Vitol Inc. (Garnishee)

150. Weatherford International, LLC (WFRD) (Garnishee)

151. White & Case LLP (Appellate Counsel Law Firm for Respondent-Appellant Petróleos de Venezuela, S.A.) (District Court Counsel Law Firm for Petrocedeño, S.A.; Petromonagas, S.A.; Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer, y Comunas, Banco Universal, C.A.)

152. White, Eric (Counsel for Plaintiffs-Appellees)

153. Zumpano Patricios & Winker (Counsel for Third Party Defendants/Claimants)

154. Zumpano, Joseph Ignacio (Counsel for Third Party Defendants/Claimants)

Appellant Petróleos de Venezuela, S.A. further submits that it is wholly owned by the Bolivarian Republic of Venezuela and therefore is not a subsidiary or affiliate of a publicly owned corporation. No publicly traded company or corporation not a party to the litigation has a financial interest in the outcome of this case or appeal.

/s/ *Claire A. DeLelle*
Claire A. DeLelle

# TABLE OF CONTENTS

INTRODUCTION AND ARGUMENT SUMMARY .......................................... 1

ARGUMENT ................................................................................................ 2

I. The District Court Lacked Subject-Matter Jurisdiction ................................ 2

A. The Response Narrows The Jurisdictional Dispute ............................ 2

B. TRIA Does Not Abrogate PDVSA's Jurisdictional Immunity ........... 4

1. TRIA Addresses Execution, Not Jurisdiction ............................ 4

2. TRIA's "Notwithstanding" Clause Does Not Convert TRIA Into A Jurisdictional Provision ................................................ 7

3. The Assets Of A Foreign State's Agency Or Instrumentality May Be Attached Under TRIA Only If The Foreign State's Jurisdictional Immunity Has Been Abrogated By A Section 1605A Judgment ............................................................ 13

C. The Osios Fail To Establish An FSIA Exception ............................. 16

D. The Osios Cannot Establish Jurisdiction Outside The FSIA ............ 18

II. The District Court Has No Article III Jurisdiction ...................................... 20

III. The District Court's Decision On Service Is Incorrect ................................ 23

A. This Court May Reach PDVSA's Personal Jurisdiction Arguments ........................................................................................ 23

B. The District Court Erred In Interpreting The FSIA's Service Requirements ...................................................................................... 24

C. The Osios Neither Attempted To Comply Nor Complied With The FSIA ....................................................................................................... 26

CONCLUSION ..... 28

CERTIFICATE OF COMPLIANCE ..... 29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)....................3, 12

*Bank Markazi v. Peterson*,
578 U.S. 212 (2016)....................8

*Berkovitz v. Islamic Republic of Iran*,
735 F.2d 329 (9th Cir. 1984)....................17, 18

*BP P.L.C. v. Mayor & City Council of Balt.*,
593 U.S. 230 (2021)....................23

*Casa Express Corp. v. Bolivarian Republic of Venezuela*,
158 F.4th 1176 (11th Cir. 2025)....................19

*CC/Devas (Mauritius) Ltd. v. Antrix Corp.*,
605 U.S. 223 (2025)....................24

*Cisneros v. Alpine Ridge Grp.*,
508 U.S. 10 (1993)....................8

*CITGO Petroleum Corp. v. Ascot Underwriting Ltd.*,
158 F.4th 368 (2d Cir. 2025)....................21

*Does 1–7 v. Taliban*,
101 F.4th 1 (D.C. Cir. 2024)....................*passim*

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003)....................13

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983)....................14, 15

*Fischer v. United States*,
603 U.S. 480 (2024)....................7

*Harris Corp. v. Nat'l Iranian Radio & Television*,
691 F.2d 1344 (11th Cir. 1982)....................24, 25

*Havlish v. Taliban*,
152 F.4th 339 (2d Cir. 2025) .......... *passim*

*Heiser v. Islamic Republic of Iran*,
735 F.3d 934 (D.C. Cir. 2013) .......... 15

*Isaac Indus., Inc. v. Petroquímica De Venezuela, S.A.*,
127 F.4th 289 (11th Cir. 2025) .......... 16

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
478 U.S. 221 (1986) .......... 20

*K Mart Corp. v. Cartier, Inc.*,
486 U.S. 281 (1988) .......... 13

*Kucana v. Holder*,
558 U.S. 233 (2010) .......... 8

*Levin v. 650 Fifth Ave. Co.*,
2023 WL 3818566 (S.D.N.Y. June 5, 2023) .......... 19

*Lippus v. Dahlgren Mfg. Co.*,
644 F. Supp. 1473 (E.D.N.Y. 1986) .......... 27

*Magness v. Russian Federation*,
247 F.3d 609 (5th Cir. 2001) .......... 26, 27

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366 (2009) .......... 7, 9

*OBB Personenverkehr AG v. Sachs*,
577 U.S. 27 (2015) .......... 16, 18

*Patel v. Garland*,
596 U.S. 328 (2022) .......... 11

*Peacock v. Thomas*,
516 U.S. 349 (1996) .......... 18, 19

*PDVSA United States Litig. Tr. v. Lukoil Pan Ams. LLC*,
65 F.4th 556 (11th Cir. 2023) .......... *passim*

*Prewitt Enters. v. OPEC*,
353 F.3d 916 (11th Cir. 2003) ....................25

*Republic of Arg. v. NML Cap., Ltd.*,
573 U.S. 134 (2014)....................11, 12

*Republic of Hungary v. Simon*,
604 U.S. 115 (2025)....................11

*Republic of Sudan v. Harrison*,
587 U.S. 1 (2019)....................3, 25

*Riley v. Bondi*,
606 U.S. 259 (2025)....................4

*Rubin v. Islamic Republic of Iran*,
583 U.S. 202 (2018)....................7, 8, 12

*S & Davis Int'l, Inc. v. Yemen*,
218 F.3d 1292 (11th Cir. 2000) ....................23

*Saudi Arabia v. Nelson*,
507 U.S. 349 (1993)....................16, 17

*Savage Servs. Corp. v. United States*,
25 F.4th 925 (11th Cir. 2022) ....................5, 8

*Smith v. LePage*,
834 F.3d 1285 (11th Cir. 2016) ....................24

*Stansell v. Revolutionary Armed Forces of Colombia*,
771 F.3d 713 (11th Cir. 2014) ....................13, 19, 22

*Stansell v. Revolutionary Armed Forces of Colombia*,
45 F.4th 1340 (11th Cir. 2022) ....................9, 19, 26

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)....................20

*Swarna v. Al-Awadi*,
622 F.3d 123 (2d Cir. 2010) ....................17

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
30 F.3d 148 (D.C. Cir. 1994) .......... 25

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*,
484 U.S. 365 (1988) .......... 6

*United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*,
783 F.3d 607 (7th Cir. 2015) .......... 9

*Verlinden B.V. v. Cent. Bank of Nigeria*,
461 U.S. 480 (1983) .......... 11

*Water Splash, Inc. v. Menon*,
581 U.S. 271 (2017) .......... 28

*Weinstein v. Islamic Republic of Iran*,
609 F.3d 43 (2d Cir. 2010) .......... 9, 10

*Yamaha Motor Corp. v. Calhoun*,
516 U.S. 199 (1996) .......... 23

**STATUTES AND RULES**

8 U.S.C. § 1182 .......... 7

28 U.S.C. § 1330 .......... 24

28 U.S.C. § 1603 .......... 13, 17

28 U.S.C. § 1604 .......... 2, 12

28 U.S.C. § 1605 .......... *passim*

28 U.S.C. § 1605A .......... *passim*

28 U.S.C. § 1606 .......... 2, 3, 5, 12

28 U.S.C. § 1607 .......... 2, 3, 5, 12

28 U.S.C. § 1608 .......... 1, 25, 26, 27

28 U.S.C. § 1610 .......... *passim*

28 U.S.C. § 1611 .......... 5, 8

Fed. R. Civ. P. 4 ....................26

Fla. Stat. § 48.161 ....................28

Fla. Stat. § 48.181 ....................27

Terrorism Risk Insurance Act of 2002,
Pub. L. No. 107-297, § 201, 116 Stat. 2322 (Nov. 26, 2002) ....................*passim*

**MISCELLANEOUS**

148 Cong. Rec. 10272 (Jun 13, 2002) ....................15

148 Cong. Rec. 23119 (Nov. 19, 2002) ....................15

*A Practical and Theoretical Analysis of Service of Process under the Foreign Sovereign Immunities Act*, 19 Int'l L. 49 (1985) ....................27

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ....................6

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters,
Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ....................26, 28

H.R. Rep. No. 107–779 (2002) ....................9, 15

*Service of Process Online*, Florida Department of State,
https://dos.fl.gov/sunbiz/other-services/service-of-process-online/ ....................28

## INTRODUCTION AND ARGUMENT SUMMARY

PDVSA's opening brief explained that the Osios' attempts to hold PDVSA liable for a default judgment against Nicolás Maduro faces three jurisdictional hurdles. First, PDVSA is wholly owned by Venezuela, so PDVSA and its property are presumptively immune from jurisdiction and execution under the FSIA. TRIA is not an exception to the FSIA and thus cannot serve as an independent jurisdictional basis for this suit. Second, the Osios' attempt to evade the FSIA rests on the premise that PDVSA is a terrorist arm of the illegitimate Maduro regime. But in *Lukoil*, 65 F.4th at 560, this Court made clear that the political-question doctrine barred any inquiry into whether Maduro's false claim to the Venezuelan presidency extended to his control over PDVSA. Third, even if there were subject-matter jurisdiction, the Osios failed to serve PDVSA under section 1608 of the FSIA, so the District Court lacked personal jurisdiction too. The Osios' responses to these defects fail on every relevant metric of statutory interpretation: structure, text, purpose, and history. And their argument, made for the first time on appeal, that Maduro momentarily hijacked and controlled PDVSA in his private capacity fails under *Lukoil*.

## ARGUMENT

### I. THE DISTRICT COURT LACKED SUBJECT-MATTER JURISDICTION

#### A. The Response Narrows The Jurisdictional Dispute

The Osios' Response establishes that the parties agree on jurisdictional fundamentals: (i) two categories of FSIA immunity, jurisdictional and execution immunity, presumptively apply to suits involving foreign sovereigns and their agencies and instrumentalities (Resp. 5); (ii) both immunities apply to the Osios' suit targeting PDVSA, an agency or instrumentality of Venezuela, and its assets (Resp. 5, 9); and (iii) the Osios' suit can only proceed if applicable law "abrogates *all* aspects of PDVSA's immunity" (Resp. 24).

But the Osios' contention that these fundamental principles of FSIA immunity operate differently in a TRIA action is unfounded. Jurisdictional immunity attaches "except as provided in sections 1605 to 1607" of the FSIA, 28 U.S.C. § 1604, which do not include TRIA. PDVSA thus is immune in *any* action unless one of the exceptions under sections 1605–1607 applies. And the Osios' contention that TRIA provides a separate waiver of jurisdictional immunity of a foreign state is contrary to the comprehensive statutory framework in which it resides. Resp. 21, 34. The more natural reading of the statutory framework is, as the United States has submitted, that TRIA provides another exception to execution immunity once jurisdictional immunity has been overcome under one of the exceptions in sections

1605 to 1607. U.S. Statement of Interest at 11–13, *Caballero v. FARC*, No. 20-mc-00040 (W.D.N.Y. Sept. 20, 2022), D.E. 125 ("U.S. *Caballero* Br."). This reading makes sense given the placement of TRIA in a note to the FSIA's execution exceptions set forth in section 1610.

The question of TRIA's proper interpretation boils down to which sister-circuit's analysis—the D.C. Circuit in *Does 1–7 v. Taliban* or the Second Circuit in *Havlish v. Taliban*—is more faithful to the text, context, and structure of "the overall statutory scheme" at issue. *See Harrison*, 587 U.S. at 11 (citation omitted). PDVSA submits that, with respect to the Second Circuit, whose divided *Havlish* opinion is subject to a pending petition for *en banc* review, the D.C. Circuit's analysis of TRIA is superior because it not only is more faithful to the text, context, and structure of the FSIA's broader statutory scheme, but also provides the most natural, common-sense construction of it.

The Osios also cannot cure their jurisdictionally defective enforcement proceeding through the FSIA's commercial-activity exception because that argument is waived and, regardless, the exception does not apply. Moreover, neither TRIA nor the District Court's ancillary jurisdiction supplies subject-matter jurisdiction here. *Amerada Hess Shipping Corp.*, 488 U.S. at 434–35. Dismissal is therefore required.

### B. TRIA Does Not Abrogate PDVSA's Jurisdictional Immunity

#### 1. TRIA Addresses Execution, Not Jurisdiction

The Osios' construction requires shying away from TRIA's text, which addresses execution only. TRIA begins by limiting its application to "case[s] in which a person has obtained a judgment," TRIA § 201(a). Next, TRIA specifies the types of judgments for which TRIA authorizes execution: "against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605A or 1605(a)(7)[.]" *Id.* Finally, TRIA declares that certain blocked assets "shall be subject to execution or attachment in aid of execution" to satisfy the judgments identified, *id.*, referring only to execution. *See Does*, 101 F.4th at 9; *Riley v. Bondi*, 606 U.S. 259, 274 (2025) (explaining a statute is not jurisdictional if it does not address the courts' power to hear an action).

TRIA's subsequent provisions confirm its focus on execution. Subsection (b) permits the President to waive TRIA's application "on an asset-by-asset basis" if an "order directing attachment in aid of execution" targets "property" subject to certain international treaties. TRIA § 201(b). And subsection (d) provides definitions for the terms "blocked asset" and "property subject to [such treaties]," confirming the focus on property, as well as for the terms "act of terrorism" and "terrorist party," defining whether a judgment falls within TRIA's scope. TRIA § 201(d).

The FSIA's text and structure underscore that TRIA is limited to execution. The FSIA includes separate exceptions to jurisdictional immunity (§§ 1605–1607) and to attachment and execution immunity (§§ 1610, 1611), each using separate and distinct operative language. *Compare, e.g.*, 28 U.S.C. §§ 1605(a) ("A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . ."), 1605A(a)(1) (same), 1605(b) ("A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case . . . ."), 1605(d) (similar), *and* 1605B(b) (same), *with* 28 U.S.C. §§ 1610(a) ("The property in the United States of a foreign state . . . shall not be immune from attachment in aid of execution . . . ."), 1610(b) ("[A]ny property in the United States of an agency or instrumentality of a foreign state . . . shall not be immune from attachment in aid of execution . . . ."), *and* 1610(d) (similar).

TRIA follows the FSIA's execution provisions, specifying certain assets "shall be subject to execution or attachment in aid of execution." TRIA § 201(a). Congress is presumed to use language intentionally, and the Court should afford meaning to the language Congress used across the FSIA and TRIA. *See Savage Servs. Corp. v. United States*, 25 F.4th 925, 935 (11th Cir. 2022) (finding no sovereign-immunity waiver because "Congress waived sovereign immunity [elsewhere] . . . much more explicitly"). This operative language is particularly

salient because TRIA is codified as a note to section 1610 of the FSIA, addressing "[e]xceptions to the immunity from attachment or execution."

The Osios cannot divorce TRIA from its broader context within the FSIA (Resp. 28 n.12) because context informs meaning. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme[.]"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) (identifying "context" as "a primary determinant of meaning"). TRIA's placement in a provision governing "immunity from attachment or execution," coupled with its text addressing execution and following the language of the FSIA's exceptions to execution immunity, points incontrovertibly to the conclusion that TRIA concerns execution alone.

TRIA's sole textual reference to jurisdictional immunity—sections 1605(a)(7) and 1605A—reinforces TRIA's focus on execution. *See Does*, 101 F.4th at 10. Section 1605A of the FSIA authorizes jurisdiction over designated state sponsors of terrorism (SSTs) for claims arising from acts of terrorism. 28 U.S.C. § 1605A. TRIA, meanwhile, provides that blocked assets "shall be subject to execution" for judgments based on claims "for which a terrorist party is not immune under section 1605A[.]" TRIA § 201(a). Consistent with the FSIA's scheme, section 1605A authorizes jurisdiction for particular claims, while TRIA authorizes

collection for judgments on such claims. If TRIA independently overcame jurisdictional immunity, the reference to section 1605A would be surplusage. *See Fischer v. United States*, 603 U.S. 480, 493 (2024) (rejecting interpretation that would "render superfluous the careful delineation" between categories of conduct).

The Osios are incorrect that TRIA "applies (1) to claims based on an act of terrorism *or* (2) to claims that may not be acts of terrorism under TRIA but that nevertheless create liability under Section 1605A." Resp. 35–36. Section 1605A applies only to claims based on acts of terrorism. *See Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 209 (2018) (holding section 1605A applies when "damages are sought as a result of acts of terrorism"). Had Congress intended to cover the not-exactly-coterminous examples of "act of terrorism" in section 1605A and the definition in 8 U.S.C. § 1182(a)(3)(B)(iii), as the Osios suggest (at 36 n.14), it would have accomplished this through TRIA's definition of "act of terrorism."

### 2. TRIA's "Notwithstanding" Clause Does Not Convert TRIA Into A Jurisdictional Provision

The Osios' argument for construing TRIA to reach jurisdictional immunity rests almost entirely on TRIA's "notwithstanding" clause, which also was the basis for the Second Circuit's erroneous conclusion in *Havlish*. Resp. 25–30. But the Supreme Court already rejected an expansive reading of TRIA's "notwithstanding" clause, holding it does not override other statutory provisions barring execution. *Elahi*, 556 U.S. at 386 (holding TRIA's "notwithstanding" clause does not moot a

statutory provision requiring compensated victims to relinquish further claims). As the Osios appear to acknowledge (at 28), a "notwithstanding" clause does not render a provision unbounded. It "simply informs that once the scope . . . is determined," contradictory provisions do not undermine that scope. *Kucana v. Holder*, 558 U.S. 233, 238 n.1 (2010); *see Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993) (explaining notwithstanding clause "signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section"); *Savage Servs. Corp.*, 25 F.4th at 941 ("[T]he statute containing that [notwithstanding] language is intended to take precedence over any preexisting or subsequently[ ]enacted legislation on the same subject.") (citation omitted).

TRIA's "notwithstanding" clause has no impact on the FSIA's jurisdictional-immunity provisions because TRIA does not conflict with those provisions. Indeed, courts have applied TRIA's "notwithstanding" clause to resolve potential conflicts pertaining to *execution alone*. *See Bank Markazi v. Peterson*, 578 U.S. 212, 217 n.2 (2016) (TRIA's "notwithstanding" clause prevails over FSIA section 1611(b), which governs *attachment and execution*.);[1] *Rubin*, 582 U.S. at 212–13 (contrasting reach of section 1610(g), which concerns but does not authorize

[1] The Osios (at 27) appear to attribute internally quoted language from *Havlish* to the Supreme Court's opinion in *Bank Markazi*. But *Havlish* was quoting from *Cisneros*. *Havlish*, 152 F.4th at 359 (quoting *Cisneros*, 508 U.S. at 18). The Supreme Court *has not* characterized TRIA's "notwithstanding" clause as "supersed[ing] all other laws."

execution, with TRIA, whose "notwithstanding" clause "specifically allow[s] § 1605A judgment holders to attach and execute against property of a foreign state"); *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 620 (7th Cir. 2015) (holding an innocent-owner defense to civil *forfeiture* must "yield in the face of TRIA's broad 'notwithstanding' clause"); *Stansell V*, 45 F.4th at 1362 n.11 (quoting *All Funds* for the proposition that TRIA's "notwithstanding" clause would supersede an innocent-owner defense to *execution*).

While there is no need to resort to legislative history, that history contradicts the Osios' reading. Congress added the "notwithstanding" clause in response to repeated presidential waivers attempting to make blocked SST assets unavailable for attachment under section 1610(f) of the FSIA. H.R. Rep. No. 107–779, at 27 (2002). The Supreme Court has recognized as much. *Elahi*, 556 U.S. at 386 ("[T]he [legislative] history suggests that Congress placed the 'notwithstanding' clause in § 201(a) . . . to eliminate the effect of any Presidential waiver issued under 28 U.S.C. § 1610(f)[.]"); *accord Does*, 101 F.4th at 13.

The only authority the Osios can offer in support of their reading is *Havlish*, which concluded that a prior Second Circuit decision, *Weinstein v. Islamic Republic of Iran*, "foreclosed" limiting TRIA to execution. 152 F.4th at 360 (citing *Weinstein*, 609 F.3d 43 (2d Cir. 2010)). But the plaintiff in *Weinstein* held a valid section 1605A judgment against Iran, an SST, and sought to satisfy that judgment against assets of

Bank Melli, an agency or instrumentality of Iran. 609 F.3d at 48. The Second Circuit rejected Bank Melli's contention that, even where section 1605A abrogates *the foreign state*'s jurisdictional immunity, a plaintiff must separately overcome the jurisdictional immunity of *the agency or instrumentality of that same foreign state*, concluding that this would be inconsistent with TRIA's reference to agency-or-instrumentality assets. *Id.* at 49. While *Weinstein* cited the "notwithstanding" clause as bolstering its conclusion, *id.*, its reasoning is inapplicable here, where the underlying judgment is against a non-sovereign party, and no exception to the jurisdictional immunity of either Venezuela or PDVSA—both "foreign states" under the FSIA—has ever been established in connection with these claims. *See Does*, 101 F.4th at 14.

*Havlish*'s remaining reasoning rested on the faulty premise that TRIA's "notwithstanding" clause does not allow an "exception" for entities that are agencies or instrumentalities of *both* foreign sovereigns *and* non-sovereign terrorist parties under TRIA. 152 F.4th at 361. But the *Havlish* court failed to establish first that TRIA conflicts with the FSIA's jurisdictional-immunity provisions; it does not. And the abstract notion that executing upon a foreign sovereign's property is a "greater affront" to its sovereignty than "merely permitting jurisdiction" (*id.* at 360 n.115 (citation omitted)) is irrelevant because the FSIA is not structured to authorize

jurisdiction whenever it authorizes execution—as *Havlish* elsewhere acknowledged (*id.* at 352).

The Second Circuit's only other explanation for this expansive reading of TRIA was to assert that TRIA was "intended to supersede" the FSIA. *Id.* at 361. This is implausible, or TRIA would have been placed differently in the statutory structure, as opposed to being codified within a note to the attachment and execution arm of the FSIA. The Osios assert that TRIA's legislative history suggests it was intended to be "comprehensive." *See* Resp. 31. Even if this history were authoritative, such outcome-driven generalities have no place in statutory interpretation. *See Patel v. Garland*, 596 U.S. 328, 346 (2022) ("[P]olicy concerns cannot trump the best interpretation of the statutory text.").

The Supreme Court has consistently affirmed, including following TRIA's enactment, that the FSIA provides the exclusive—and "*comprehensive*"—jurisdictional framework for *all* litigation involving foreign sovereigns and their agencies and instrumentalities. *NML Cap., Ltd.*, 573 U.S. at 141 (explaining the term "comprehensive" is "key" to the FSIA's application); *see, e.g.*, *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983) ("The [FSIA] must be applied by the district courts in every action against a foreign sovereign[.]"); *Republic of Hungary v. Simon*, 604 U.S. 115, 118 (2025) ("To sue a foreign sovereign in the courts of the United States, Plaintiffs must follow the strictures of the [FSIA].").

The Osios do not identify a single example of any non-FSIA law that has ever been construed to override the FSIA's longstanding construction of the FSIA as the exclusive basis of subject-matter jurisdiction. PDVSA is aware of none.

Stepping back, the Osios' position carries the remarkable consequence that a plaintiff who obtains a judgment against a non-sovereign terrorist party can wield that judgment, through TRIA, to eviscerate core pillars of the FSIA's statutory scheme, including that: (i) the FSIA is the sole source of jurisdiction for actions against foreign states and their agencies and instrumentalities, *Amerada Hess Shipping Corp.*, 488 U.S. at 434; (ii) unless a statutory exception "as provided in sections 1605 to 1607" of the FSIA applies, foreign states and their agencies and instrumentalities are immune from jurisdiction, 28 U.S.C. § 1604; and (iii) FSIA jurisdictional immunity is distinct from attachment immunity, with each type of immunity governed by distinct exceptions that use distinct operative language, *Rubin*, 583 U.S. at 205; *NML Cap.*, 573 U.S. at 142. This all supposedly would be accomplished by the word "notwithstanding" in TRIA. Thus, to accept the Osios' construction, the Court would also need to accept that Congress silently authorized a backdoor abrogation of jurisdictional sovereign immunity for foreign-state agencies and instrumentalities, despite an entire FSIA statutory framework making clear that such immunity is only abrogated in expressly limited, enumerated instances. This conclusion is untenable.

### 3. The Assets Of A Foreign State's Agency Or Instrumentality May Be Attached Under TRIA Only If The Foreign State's Jurisdictional Immunity Has Been Abrogated By A Section 1605A Judgment

The Osios' construction also flounders against TRIA's reference to "agenc[ies] or instrumentalit[ies] of [a] terrorist party[.]" TRIA § 201(a). That reference further establishes that TRIA provides an exception to attachment-and-execution immunity. Under TRIA, "'terrorist party' means a terrorist, a terrorist organization . . . , or a foreign state designated as [an SST] . . . ." TRIA § 201(d)(4). In *Stansell II*, this Court supplied the definition for an "agency or instrumentality" of a "terrorist" or a "terrorist organization" in cases where all the third-party claimants were non-sovereign designated narcotics traffickers. *See* 771 F.3d at 724 n.6. But this Court did not address the separate question of how to interpret the phrase "agency or instrumentality of [a] terrorist party" when the "agency or instrumentality" belongs to a "foreign state designated as [an SST]." *See id.*

That definition is supplied by the FSIA. Under the FSIA, an "agency or instrumentality" of a foreign state is a term of art that is defined to include entities directly and majority-owned by the foreign state. *See* 28 U.S.C. § 1603(b)(2); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). TRIA expressly incorporates section 1605A, and there can be no dispute that the FSIA definition applies there. 28 U.S.C. § 1603 (definitions apply "[f]or purposes of this chapter," which includes § 1605A and § 1610, to which TRIA is codified as a note); *see K Mart Corp. v.*

*Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.").

The FSIA definition is important here because it determines in part whether the assets of a terrorist party's agency or instrumentality are subject to attachment under TRIA. TRIA authorizes execution of "the blocked assets *of* [a] terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party)[.]" TRIA § 201(a) (emphasis added). For the assets to be subject to execution, they must be assets in which the judgment-debtor has an ownership interest. *See* U.S. *Caballero* Br. 29–31.

In cases seeking to execute against the assets of a foreign state's agency or instrumentality, "of" means assets in which the foreign state has a beneficial interest by virtue of its ownership interest in the agency or instrumentality. TRIA thus collapses the ordinary presumption of corporate separateness between foreign states and their agencies and instrumentalities. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626–27 (1983) ("*Bancec*"). In other words, the references to section 1605A and "agency or instrumentality" mean that when foreign sovereign entities are involved, TRIA authorizes attachment of agency-or-instrumentality assets only where the jurisdictional immunity of the foreign state has been abrogated through a section 1605A judgment.

The Osios contend that they can reach PDVSA's assets because, according to the Osios, PDVSA is an "agency or instrumentality" of Maduro and his regime. But there can be no such agency relationship here because Venezuela, not Maduro, owns PDVSA, and the blocked assets of PDVSA in question are not assets "of" Maduro (the judgment debtor). Holding otherwise would contravene "the established principle that a judgment creditor cannot acquire more property rights in a property than those already held by the judgment debtor." *Heiser v. Islamic Republic of Iran*, 735 F.3d 934, 938 (D.C. Cir. 2013) (citation omitted).

Given the clarity of TRIA's text, there is no need to resort to legislative history. But if considered, the legislative history confirms that satisfying judgments against *designated SSTs* was the primary objective of TRIA's inclusion of the phrase "agency or instrumentality." *See* H.R. Rep. No. 107–779, at 27. Legislators were concerned with overcoming the *Bancec* presumption of corporate separateness between SSTs and their agencies and instrumentalities in the limited context of using blocked assets to satisfy section 1605A judgments. *See* 148 Cong. Rec. 23119, 23122 (Nov. 19, 2002) (statement of Sen. Harkin); 148 Cong. Rec. 10272, 10312 (Jun 13, 2002) (statement of Sen. Allen). The statement of Rep. Fossella that the Osios invoke (at 31–32) confirms the same.

### C. The Osios Fail To Establish An FSIA Exception

The Osios advocate in the alternative (at 45–49) that jurisdiction exists under the FSIA commercial-activity exception. Although the Osios raised this theory early in the proceedings (D.E. 94 at 29), they abandoned it in favor of their theory that TRIA was all-encompassing (D.E. 447 at 14). The Magistrate Judge's Report and Recommendation determined that "Plaintiffs are not operating under" the commercial-activity exception. D.E. 401 at 22. But the Osios never objected to that holding and instead embraced it before the District Court, asserting that the FSIA's exception "is not the basis of this Court's jurisdiction." *See* D.E. 447 at 14. The Osios therefore are precluded from now arguing that the commercial-activity exception cures their jurisdictionally defective action. *Isaac Indus., Inc. v. Petroquímica De Venezuela, S.A.*, 127 F.4th 289, 297 (11th Cir. 2025) ("[A] party who fails 'to file objections to a magistrate judge's order in a non-dispositive matter to the district court waives that claim on appeal.'" (citation omitted)).

Regardless, the commercial-activity exception applies only to an "action based upon" one of three categories of commercial activity. 28 U.S.C. § 1605(a)(2). This language requires courts to identify "the 'particular conduct' that constitutes the 'gravamen' of the suit," or the "acts that actually injured [the plaintiffs]." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993)). The gravamen of the Osios' claim is not

"commercial" where the Osios' theory of liability rests incontrovertibly upon Mr. Albán's death. 28 U.S.C. § 1603(d); *see Nelson*, 507 U.S. at 361 (explaining alleged "wrongful arrest, imprisonment, and torture . . . could not qualify as commercial"); *Berkovitz v. Islamic Republic of Iran*, 735 F.2d 329, 332 (9th Cir. 1984) ("Berkovitz's murder, no matter what its purpose, does not have the nature of commercial activity.").

The exception also requires that the claims be based upon an activity "carried on . . . by" or "of" the foreign state—here, PDVSA. 28 U.S.C. § 1605(a)(2); *see Swarna v. Al-Awadi*, 622 F.3d 123, 147–48 (2d Cir. 2010). But the Complaint does not allege a single act *by PDVSA*, or any PDVSA agent or employee, connected to Mr. Albán's death. As for the Osios' theory about "a narco-terrorism conspiracy" (Resp. 48)—which is not the gravamen of the suit they filed—that theory also fails to rest upon any alleged conduct *by PDVSA*.

On appeal, the Osios distance themselves from the commercial-activity exception by asserting they sued "Maduro in a private capacity," Resp. 5, and PDVSA "acted as an agency/instrumentality of Maduro *in that private capacity*," Resp. 42. To the extent the Osios are able to collect from unofficial rogue agents, they cannot do so by executing against sovereign blocked funds of PDVSA because those are assets "of" the official, U.S.-recognized government of Venezuela. *Lukoil*, 65 F.4th at 562.

Finally, the commercial-activity exception is unavailable because the Osios cannot establish the requisite U.S. nexus. The first clause is unavailable because the Osios' action as alleged is based upon the kidnapping, torture, and murder that occurred in Venezuela (D.E. 1 ¶¶ 1, 10–11), not on a "commercial activity carried on in the United States," 28 U.S.C. § 1605(a)(2). Mr. Albán's alleged travel to the United States before his kidnapping is irrelevant. *See OBB Personenverkehr*, 577 U.S. at 38 (holding purchase of rail pass in the United States could not support application of exception to suit based on injuries suffered later when using that rail pass abroad). And the third clause is unavailable because the "direct effect" of the attack on Mr. Albán occurred in Venezuela, not "in the United States" as the FSIA requires. 28 U.S.C. § 1605(a)(2); *see Berkovitz*, 735 F.2d at 332 ("Berkovitz's murder [in Iran] . . . did not have that type of direct effect in the United States which would permit jurisdiction[.]"). The commercial-activity exception therefore cannot support jurisdiction.

**D. The Osios Cannot Establish Jurisdiction Outside The FSIA**

Although the Osios also invoke the District Court's ancillary jurisdiction to enforce its judgment against the Maduro Defendants, such jurisdiction is inapplicable. The distinction in *Peacock* is not, as the Osios suggest (at 37 n.15), between cases with factual similarities and those without. Instead, the issue is whether this case fits within *Peacock*'s allowance for "effectuat[ing the court's]

decrees or judgments" against parties already adjudged liable, or instead whether it seeks "to shift [a judgment-debtor's] liability" to an entity not adjudged liable in the original proceeding. *Casa Express Corp. v. Bolivarian Republic of Venezuela*, 158 F.4th 1176, 1184 (11th Cir. 2025) (citing *Peacock*, 516 U.S. at 357–58). As in *Casa Express*, ancillary jurisdiction is inapplicable here because the Osios seek to hold PDVSA liable based on a different theory of liability (agency) than its suit against the Maduro Defendants. *See also Levin v. 650 Fifth Ave. Co*., 2023 WL 3818566, *4 (S.D.N.Y. June 5, 2023) ("[TRIA and the FSIA] impose additional requirements beyond those created by 28 U.S.C. § 1963 and the Court's inherent ancillary jurisdiction that must be met before a federal court may exercise subject matter jurisdiction over a foreign sovereign or its agencies and instrumentalities.").

The authorities the Osios cite (at 37) do not hold otherwise. *Stansell V* merely repeated the statement from *Stansell II* that "execution and garnishment proceedings are ancillary proceedings." 45 F.4th at 1349 (quoting 771 F.3d at 733). While that may be true as a background principle, *Peacock* and *Casa Express* make clear that ancillary *jurisdiction* might support post-judgment enforcement based on, among other requirements, the same underlying theory of liability. *Stansell V* otherwise disposed of the issue by noting the appellants had failed to establish "any real harm or prejudice" such that any error would not require reversal. 45 F.4th at 1349. *Stansell II*, meanwhile, used the phrase "ancillary" in addressing the point in time

that an execution or garnishment proceeding commenced, and not in connection with jurisdiction. 771 F.3d at 733.

The Osios cannot establish the District Court's subject-matter jurisdiction over their claims targeting PDVSA and its assets. Dismissal therefore is required.

## II. THE DISTRICT COURT HAS NO ARTICLE III JURISDICTION

Dismissal is also required on political-question grounds. Contrary to the Osios' assertion (at 41), PDVSA's argument that the case must be dismissed on those grounds is not a "fallback" position. It is a challenge to the District Court's Article III jurisdiction and, thus, is a dispositive question that must be resolved at the outset of the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100–03 (1998); *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986).

The Osios concede (at 42) that among the controversies excluded from judicial review are determinations about "the legitimate political leadership of a foreign country." *Lukoil*, 65 F.4th at 562. But in an attempt to limit the consequences of their concession, the Osios argue that PDVSA—an oil company that is wholly owned by the foreign state of Venezuela—has been "hijack[ed]" by Maduro as a private person and not as a purported political leader. *See* Resp. 42. That argument is foreclosed by this Court's precedent in *Lukoil*.

In *Lukoil*, this Court was asked by representatives of the Maduro regime to decide whether Maduro had the authority to represent PDVSA in U.S. courts. *See*

*Lukoil*, 65 F.4th at 559, 562. This Court held it lacked jurisdiction to decide that question because it was a nonjusticiable political question that would require the Court to second-guess the Executive Branch's recognition of the opposition government as the legitimate leadership of Venezuela. *Id.* at 562–63; *see CITGO Petroleum Corp. v. Ascot Underwriting Ltd.*, 158 F.4th 368, 386–87 (2d Cir. 2025). Implicit in the Court's decision is the recognition that, if Maduro had any authority to make decisions on behalf of PDVSA, it would have to flow from his capacity as the president of Venezuela. This Court made no distinction between his capacity in a public or a private sense.

Nor did Maduro. The Maduro regime's position in *Lukoil* was that the political-question doctrine may apply but the Court should remand the case to allow the district court to determine whether the Executive Branch had changed its view. *Id.* at 563. At no point did the Maduro regime argue, as the Osios do here (at 42), that the political-question doctrine was inapplicable. Nor did the Maduro regime attempt to avoid the doctrine, as the Osios do here, by resorting to the novel argument that Maduro exercised authority over PDVSA as a private person. This Court should not endorse a theory about Maduro's capacity that not even the Maduro regime advanced.

The Osios' attempt to distinguish *Lukoil* (at 44) is unavailing because, at bottom, the political question there is the same as the political question here. In

discussing the meaning of "agency or instrumentality" under TRIA (at 42–43), the Osios do not explain that, according to *Stansell II*, the term includes "individual members, divisions[,] and networks" of a Specially Designated Narcotics Trafficker ("SDNT") that are "owned, controlled, or directed by, or acting for or on behalf of," the SDNT. 771 F.3d at 724 n.6.

If applied here, the agency-or-instrumentality inquiry thus asks who owns, controls, or directs PDVSA and whether that entity is an SDNT. The starting point for resolving the inquiry is the undisputed fact that PDVSA is owned by Venezuela and controlled and directed by an ad hoc board established by the U.S.-recognized Venezuelan government. That begs the ultimate question of who owns, controls, or directs Venezuela. As this Court made clear in *Lukoil*, that is a political question committed to the Executive Branch, and courts lack jurisdiction to review it.

The Osios contend that the political-question doctrine is inapplicable here because they obtained a judgment against Maduro and his associates in their "private capacities." Resp. 42. But this is mere sleight of hand. And to the extent the Osios now suggest on appeal that their injuries arose from a nonpublic dispute, that is contradicted by their Complaint, which makes clear that the Osios sued Maduro and his associates for murdering a political rival to stop him from challenging Maduro's claim to the presidency. D.E. 1 at ¶¶ 1–15, 35, 113–200, 205–06. Whether PDVSA should be held liable for those offenses is a quintessential political question because

it would require this Court to find that PDVSA and its blocked assets are not owned and controlled by the U.S.-recognized Venezuelan government.

The Osios nonetheless insist that courts can decide that question because the United States "had not questioned Maduro's status as President of Venezuela" before "January 2019." Resp. 44. That is wrong. In *Lukoil*, this Court found: "The United States ceased to recognize the government of Nicolás Maduro, who purports to serve as president of Venezuela, in August 2017." 65 F.4th at 561. The Osios' attempt to sidestep Article III's jurisdictional guardrails is meritless.

## III. THE DISTRICT COURT'S DECISION ON SERVICE IS INCORRECT

### A. This Court May Reach PDVSA's Personal Jurisdiction Arguments

The Osios incorrectly argue (at 50) this Court may not reach the "aspect of [PDVSA's] appeal" challenging the District Court's personal jurisdiction. Interlocutory appellate jurisdiction exists as to a particular order, and this Court may reach "any issue fairly included within [that] order because it is the *order* that is appealable[.]" *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996) (citation omitted); *see BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230 (2021).

This Court may also exercise pendent appellate jurisdiction over the personal jurisdiction question because it is "inextricably intertwined" with the issues on appeal. *S & Davis*, 218 F.3d at 1297 (exercising pendent appellate jurisdiction over a personal jurisdiction question arising under the FSIA that was "inextricably

intertwined" with the appealable issue). Indeed, under the FSIA, "subject matter jurisdiction plus service of process equals personal jurisdiction." *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223, 233 (2025) (citation omitted); *see* 28 U.S.C. § 1330(b).

PDVSA's contention that the Osios' service attempts could not have resulted in "actual notice," *see infra* § III.C, is also "inextricably intertwined" with PDVSA's argument that the District Court is barred from determining whether PDVSA is an "agency or instrumentality" of the illegitimate Maduro regime. *Smith v. LePage*, 834 F.3d 1285, 1292 (11th Cir. 2016) ("Pendent appellate jurisdiction is proper if the non-appealable matters are 'inextricably intertwined' with an appealable decision[.]" (citation omitted)). Whether the Osios' mailings to Venezuelan facilities in Caracas resulted in "actual notice" depends on whether officials at those facilities represent PDVSA for U.S.-recognition purposes, implicating the "same facts and the same law" as PDVSA's political-question challenge. *Id.*

### B. The District Court Erred In Interpreting The FSIA's Service Requirements

*Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344 (11th Cir. 1982), does not support the District Court's novel rule that actual notice confers personal jurisdiction under the FSIA. *See* D.E. 401. The *Harris* Court admonished those invoking the FSIA "to follow the service provisions it contains" because "[t]here is no excuse for departure from the dictates of the statute." 691 F.2d at 1352

n.16. And *Harris* did not hold awareness of an action is a *substitute* for, or otherwise qualifies as, proper service. Regardless, this Court has since made clear that "actual notice alone [i]s not enough to allow the court personal jurisdiction over a party." *Prewitt Enters.*, 353 F.3d at 924 n.14. Moreover, *Harris* predates *Harrison*, 587 U.S. at 19, where the Supreme Court required "adherence to [the] strict requirements" of the FSIA, rejecting actual notice as a substitute for proper service on a foreign state.

The Osios misconstrue section 1608(b)(2) as having "flexible" language on "actual notice." Resp. 57. The language they rely on, referring to service "reasonably calculated to give actual notice," does not appear in section 1608(b)(2). It appears in section 1608(b)(3) and applies to a limited set of circumstances. In *Harrison*, the Supreme Court rejected a similar argument, explaining that deliberate inclusion of the "reasonably calculated to give actual notice" standard in section 1608(b)(3) and its omission in section 1608(a)(3) demonstrates Congress did not intend to incorporate actual notice in section 1608(a)(3). 587 U.S. at 12. That conclusion applies with equal force to section 1608(b)(2) where the language likewise is missing.

Even if "actual notice" were relevant, it would matter only if PDVSA's actual notice resulted from the Osios' attempted service. *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153 (D.C. Cir. 1994) ("[S]ection 1608(b) may be

satisfied by technically faulty service *that gives adequate notice* to the foreign state." (emphasis added)); *Magness v. Russian Federation*, 247 F.3d 609, 618 (5th Cir. 2001) ("[S]ubstantial compliance with section 1608(b) was lacking" where plaintiffs failed to show their non-compliant service resulted in the appearing defendants' notice of the action.). None of the Osios' purported attempts at service gave actual notice to PDVSA; nor were they calculated to do so. *See infra* § III.C.

### C. The Osios Neither Attempted To Comply Nor Complied With The FSIA

Contrary to the Osios' contentions (at 62), the Osios could have served PDVSA through the Hague Service Convention. Article 14 provides that should "[d]ifficulties arise," service may be effected "through diplomatic channels." Diplomatic service has already proven effective for other Venezuelan state-owned entities in comparable TRIA proceedings. *See* Ex. A. to Ltr. To Hon. S. Netburn, *Stansell v. FARC*, No. 16-mc-405 (S.D.N.Y. *filed* June 16, 2023), ECF 525-1. PDVSA has repeatedly identified diplomatic service as the proper avenue. *See, e.g.*, D.E. 355, 575.

The Osios' mailing to an address in Venezuela had no chance of reaching PDVSA—or giving PDVSA notice—because PDVSA's facilities in Venezuela were usurped by the illegitimate Maduro regime. Regardless, that issue is a non-justiciable political question. *See supra* § II.

The Osios also purported to serve a copy of their motion "in compliance with Rule 4, Federal Rules of Civil Procedure and statutes incorporated by reference therein." D.E. 105 at 1–2. After PDVSA entered its limited appearance, the Osios said this referred to substituted service on Florida's Secretary of State. *See* D.E. 344. There is no record evidence that the Osios mailed anything to the Secretary. But substituted service is not contemplated by the FSIA and would not have given PDVSA actual notice of this action.

The Osios point to section 1608(b)(2), referencing agents "authorized by appointment or by law to receive service of process." Resp. 58. But such language refers to federal law, not state law. Incorporating state law would supplement the FSIA with "a multitude of non-uniform methods of service for each of the fifty states." *Lippus v. Dahlgren Mfg. Co.*, 644 F. Supp. 1473, 1476–77 (E.D.N.Y. 1986) (holding service on a state Secretary of State is not permitted by section 1608(b)(2)); *accord Magness*, 247 F.3d at 614. Congress could not have intended the FSIA—meant to ensure uniformity—to incorporate methods of service from all fifty states. *See A Practical and Theoretical Analysis of Service of Process under the Foreign Sovereign Immunities Act*, 19 Int'l L. 49, 61–65 (1985).

Moreover, PDVSA does not qualify for substituted service under Florida law. The Osios allege PDVSA conducted business in Florida, but reference (at 61) only actions by the illegitimate Maduro regime. *See* Fla. Stat. § 48.181(2) (permitting

substituted service for proceedings arising from Florida business); *see supra* § I.C. And the substituted service statute required the Osios to mail the documents to PDVSA, *see* Fla. Stat. § 48.161, but that mailing is preempted by the Hague Service Convention. *See Water Splash*, 581 U.S. at 273.

Finally, the Florida Secretary of State does not transmit documents to the "served" entity, making it impossible for the entity to receive notice of the proceedings. *See Service of Process Online*, Florida Department of State, https://dos.fl.gov/sunbiz/other-services/service-of-process-online/ (stating the office "do[es] not serve the designated individual"). Such "service" thus could not have provided PDVSA with notice.

## CONCLUSION

For these reasons, PDVSA respectfully requests the Court reverse the District Court's decision, vacate the District Court's order and turnover judgment, dissolve the writs of garnishment, deny pending turnover motions, and dismiss the action with prejudice.

Dated: January 28, 2026

Respectfully submitted,

By: /s/ *Claire A. DeLelle*

Claire A. DeLelle
Danielle S. Tarin
Alison F. Perry
Kufere J. Laing
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
claire.delelle@whitecase.com
danielle.tarin@whitecase.com
alison.perry@whitecase.com
kufere.laing@whitecase.com
(202) 626-3600

W. Dylan Fay
White & Case LLP
200 S. Biscayne Blvd.
Miami, FL 33131
dylan.fay@whitecase.com
(305) 371-2700

*Counsel for Petróleos de Venezuela, S.A.*

**CERTIFICATE OF COMPLIANCE**

This Brief complies with the type-face and volume limitations of Federal Rules of Appellate Procedure 32(a)(5)–(7) and this Court's local rules because it contains 6496 words, excluding parts of the brief exempted by Rule 32(f) and this Court's local rules, and has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ *Claire A. DeLelle*
Claire A. DeLelle